UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
ELWOOD J. COOPER,                   )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civil Action No. 99-2513 (RBW)
                                    )
UNITED STATES DEPARTMENT            )
OF JUSTICE, et al.,                 )
                                    )
            Defendants.             )
                                    )
_____)

## MEMORANDUM OPINION

Plaintiff Elwood J. Cooper, proceeding pro se, brings this action against several federal agencies under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), seeking the release of "all records related to his arrest and prosecution." Cooper v. DOJ, No. 99-cv-2513, 2005 WL 670296, at *1 (D.D.C. March 22, 2005).[1] Currently before the Court are the parties' renewed cross-motions for summary judgment, as well as Cooper's "Motion for Leave of the Court to File Supplemental Pleading and Compel Producdion [sic] of Documents" ("Motion for Leave and to Compel"). Upon consideration of the parties' submissions and the entire record in this case,[2] the Court concludes for the following reasons that the defendants' renewed motion for

---

[1] By Order dated February 5, 2002, this case was consolidated with Civil Action No. 01-1074 by Judge Thomas Penfield Jackson, a former member of this Court.

[2] In addition to the filings already identified, the Court considered the following submissions and their supporting exhibits in rendering its decision: the Defendants' Statement of Material Fact as to which There is No Genuine Dispute filed in Civil Action No. 99-2513 ("Defs.' Facts in 99-2513"); the defendants' Statement of Material Facts Not in Dispute filed in Civil Action No. 01-1074 ("Defs.' Facts in 01-1074"); the Defendants' Memorandum in Support of Renewed Motion for Summary Judgment ("Defs.' Renewed Mem."); the Defendants' Statement of Material Facts Not in Genuine Dispute Relating to Renewed Motion for Summary Judgment ("Defs.' Renewed Facts"); the Plaintiff's Cross-Motion in Response to the Defendants' Renewed Motion for Summary Judgment and Renewed Motion to Supplement Preliminary Injunction and for Discovery and Hearing Thereon and to Appear (continued . . .)

1

summary judgment must be granted in part and denied in part without prejudice, Cooper's renewed cross-motion for summary judgment must be denied without prejudice, and Cooper's Motion for Leave and to Compel must be granted in part and denied in part.

## I. BACKGROUND

The procedural history of this case is long and complicated. The Court will set forth only the background information necessary to resolve the parties' pending motions.

Cooper is a Bahamian citizen currently incarcerated at the U.S. Penitentiary in Coleman, Florida, where he is serving a life sentence after being convicted of drug trafficking offenses in the United States District Court for the Southern District of Florida. See Cooper, 2005 WL 670296, at *1; Defs.' Renewed Facts ¶ 1. On May 3, 1999, he submitted separate FOIA requests to the Drug Enforcement Administration ("DEA"), the United States Customs Service ("Customs"), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and the United States Marshals Service ("Marshals Service"), seeking records concerning his arrest and prosecution. See Defs.' Facts in 01-1074 ¶¶ 1, 5, 9; Defs.' Facts in 99-2513 ¶¶ 1, 10. "Each agency (or sub-agency) named as a defendant . . . processed Cooper's request administratively, and . . . released to him those documents it deem[ed] not subject to various [FOIA] exemptions." Memorandum and Order at 2, Cooper v. DOJ, No. 99-cv-2513 (D.D.C. May 28, 2003) (TPJ).

---

(. . . continued)
Therein Via Video Conference ("Pl.'s Cross-Mot."); the Plaintiff's Statement of Genuine Issues of Material Facts in Opposition to Defendants' Statement of Material Fact Not in Genuine Dispute Relating to Renewed Motion for Summary Judgment ("Pl.'s Facts"); the Defendants' Consolidated Opposition to Plaintiff's Cross-Motion for Summary Judgment and to Plaintiff's Renewed Motion for Preliminary Injunction and Discovery ("Defs.' Opp'n"); the Defendants' Response to Plaintiff's Statement of Genuine Issues of Material Fact ("Def.'s Resp. to Pl.'s Facts"); and the "Plaintiff's Reply to the Defendants' Consolidated Opposition to Plaintiff's Cross-Motion for Summary Judgment, Renewed Motion for Injunction and Discovery, and Motion for Leave to Supplement and Compel Production of Documents and Defendants' [Response] to Plaintiff's Statement of Genuine Issues of Material Facts" ("Pl.'s Reply").

Other documents were "released with redactions corresponding to applicable exemptions," namely "FOIA exemptions (b)(2) and (b)(7)."  Id.

By Memorandum and Order dated May 28, 2003, Judge Thomas Penfield Jackson, a former member of this Court, granted the defendants' motions for summary judgment after finding that they had "fully complied" with their FOIA obligations in responding to Cooper's requests.  Id. at 3.  On April 23, 2004, the District of Columbia Circuit vacated Judge Jackson's order and remanded the case to this Court.  Cooper v. DOJ, No. 03-5172, 2004 WL 895748, at *1 (D.C. Cir. April 23, 2004) (per curiam).  The Circuit's decision focused solely on the search for records conducted by the Marshals Service.  See id. at *2.  Specifically, it found that although the Marshals Service "submitted affidavits detailing the searches they conducted and the FOIA exemptions that applied," which gave rise to a "presumption that the [Marshals Service's] search was adequate," Cooper had

> submitted countervailing evidence as to the adequacy of the [Marshals Service's] search, repeatedly pointing to cashier's checks that had not been produced.  In support, [Cooper] cited the trial testimony of a DEA agent stating that the cash seized in connection with [Cooper's] criminal prosecution was converted into cashier's checks and sent to the [Marshals Service].  Thus, contrary to the district court's conclusion that [Cooper] "insists, without offering any proof, that other documents exist," Mem. Op. at 2, [Cooper] did offer such proof.  Moreover, prior to the district court's ruling on summary judgment, [the defendants] indicated that they had not produced a copy of a check that was transferred from the DEA to the [Marshals Service], and offered to submit an additional declaration from [Marshals Service] addressing it.

Id.  The Circuit also rejected the defendants' argument that "they did not produce the cashier's checks because [Cooper's] FOIA request did not specifically identify the checks," noting that Cooper's request "sought all records pertaining to his criminal case, and the government has a duty to construe FOIA requests liberally."  Id. (citing Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995)).  The court added that the FOIA obligates agencies "to pursue

3

any 'clear and certain' lead[s] it cannot in good faith ignore." Id. (quoting Kowalczyk v. DOJ, 73 F.3d 386, 389 (D.C. Cir. 1996)).  Because the defendants "offered no explanation as to why an adequate search of the [Marshals Service's] records in response to [Cooper's] 1999 FOIA request would not have . . . produced the checks," the Circuit found that the defendants had "not rebutted the evidence presented by [Cooper] that raised a substantial doubt as to the adequacy of the [Marshals Service's] search," and that, consequently, "summary judgment was not appropriate on this issue."  Id.

Following the Circuit's remand, Judge Jackson scheduled a status conference for July 13, 2004.  Cooper, 2005 WL 670296, at *1.  However, "[n]one of the parties appeared," and "Judge Jackson dismissed the case from the bench because the cashier's checks in dispute had been turned over to [Cooper]."  Id.  Judge Jackson deemed dismissal of the case appropriate because, in his view, the defendants' production of the cashier's checks to Cooper resolved "the factual dispute for which [the] case was remanded."  Order, Cooper v. DOJ, No. 99-cv-2513 (D.D.C. July 13, 2004) (TPJ).

Upon Judge Jackson's retirement, this case was randomly reassigned to Judge Ricardo Urbina, another former member of this Court, on October 28, 2004.  In March 2005, Judge Urbina denied two of Cooper's motions seeking reconsideration of Judge Jackson's dismissal order.  See Cooper, 2005 WL 670296, at *1-*3.  Cooper again appealed the dismissal of his case to the Circuit on March 28, 2005.  ECF No. 70.

In September 2005, while Cooper's second appeal was pending, the Marshals Service and DEA "made additional documents relating to the cashier's checks available to [Cooper]."  Defs.' Renewed Facts ¶ 2.  According to the defendants, this release of records "resulted from a search

4

by the [Marshals Service] for three cashier's checks [conducted] in response" to the Circuit's first remand in April 2004. Id. ¶ 3.

On December 28, 2005, the Circuit vacated Judge Jackson's July 13, 2004 dismissal order and remanded the case back to this Court for a second time. Order, Cooper v. DOJ, No. 05-5093 (D.C. Cir. Dec. 28, 2005) (per curiam). The Circuit's remand order provided the following instructions:

> On remand, the district court shall reevaluate the adequacy of the United States Marshals Service's . . . search for records in general, as this court's April 23, 2004 remand memorandum instructed. The [Marshals Service's] production during this appeal of additional records responsive to [Cooper's FOIA] request has not rendered this case ready for summary appellate disposition because the production casts even more doubt on the adequacy of the Marshals Service's initial search. On remand, the district court also shall address any challenges made by [Cooper] to the redactions associated with this production.

Id. After the Circuit's remand, the parties filed renewed cross-motions for summary judgment. On April 20, 2012, this case was randomly reassigned to the undersigned member of the Court upon Judge Urbina's retirement.

## II. STANDARD OF REVIEW

"FOIA cases typically and appropriately are decided on motions for summary judgment." Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (collecting cases). Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he agency bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." Weisberg v. DOJ, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

### III.  ANALYSIS

The Circuit's second remand order directed this Court to do two things: (1) "reevaluate the adequacy of the United States Marshals Service's . . . search for records in general, as [the Circuit's] April 23, 2004 remand memorandum instructed," and (2) "address any challenges made by [Cooper] to the redactions associated with th[e] production" of documents made by the Marshals Service while the plaintiff's second appeal was pending.  Order, Cooper v. DOJ, No. 05-5093 (D.C. Cir. Dec. 28, 2005) (per curiam).  Although the parties urge the Court to address other, unrelated matters that the plaintiff raised before the Circuit during his second appeal, see Defs.' Renewed Mem. at 2; Pl.'s Cross-Mot. at 2-3, the Court deems it appropriate to focus solely on the two issues identified by the Circuit in its second remand order, given that these were the only issues that rendered "summary appellate disposition" of the case inappropriate, Order, Cooper v. DOJ, No. 05-5093 (D.C. Cir. Dec. 28, 2005) (per curiam).

**A.     Adequacy of the Search**

**1.     Legal Standards**

When a FOIA requester challenges the adequacy of an agency's search for responsive records, "the agency must show, viewing the facts in the light most favorable to the requester, . . . that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" Steinberg v. DOJ, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).  "The question is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.'"  Id. (emphasis in original).  Thus, "the failure of an agency to turn up one specific document in its search does not alone render a search inadequate," for "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the

methods used to carry out the search." Iturralde v. Comptroller of Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted); see also SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." (citations omitted)). "A FOIA search is sufficient if the agency makes 'a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473 F.3d 312, 318 (D.C. Cir. 2006) (quoting Nation Magazine, 71 F.3d at 890). The "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested," Campbell v. DOJ, 164 F.3d 20, 28 (D.C. Cir. 1998) (internal quotation marks omitted), and it must pursue any leads to responsive records that are "both clear and certain," Kowalczyk, 73 F.3d at 389. Ultimately, "[t]he adequacy of the search . . . is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Steinberg, 23 F.3d at 551 (quoting Weisberg, 745 F.2d at 1485).

To demonstrate the adequacy of its search at the summary judgment stage, "the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith," id., "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched," Iturralde, 315 F.3d at 313-14 (internal quotations and citation omitted; alterations in original). At minimum, the agency affidavits must "describe . . . what records were searched, by whom, and through what process." Steinberg, 23 F.3d at 552. Moreover, "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., 926 F.2d at 1200 (citations omitted).

7

In response to an agency's affidavit, a "plaintiff may . . . provide 'countervailing evidence' as to the adequacy of the agency's search." Iturralde, 315 F.3d at 313-14 (quoting Founding Church of Scientology of Washington, D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)). If the plaintiff provides "sufficient evidence to raise 'substantial doubt' concerning the adequacy of [the agency's] search," particularly when there are "'well defined requests and positive indications of overlooked materials,' summary judgment is inappropriate." Id. at 314 (quoting Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999)). On the other hand, "trivial matters, such as typographical errors and minor ambiguities" in the agency's submissions "support neither [an] allegation that [the agency's] search procedures were inadequate, nor an inference that it acted in bad faith." SafeCard Servs., 926 F.2d at 1202. "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).

### 2.   Adequacy of the Marshals Service's Search for Responsive Records

As noted, the "cashier's checks" used in connection with Cooper's criminal prosecution, which the Marshals Service "had not produced" in response to Cooper's May 1999 FOIA request, were deemed by the Circuit to constitute "countervailing evidence" casting doubt on the adequacy of the Marshals Service's initial search. Cooper, 2004 WL 895748, at *2. The Circuit found that the defendants "offered no explanation as to why an adequate search of the [Marshals Service's] records in response to [Cooper's] 1999 FOIA request would not have . . . produced the checks," and that the defendants consequently had "not rebutted the evidence presented by

[Cooper] that raised a substantial doubt as to the adequacy of the [Marshals Service's initial] search." Id.

With their renewed motion for summary judgment, the defendants have submitted a supplemental declaration describing the Marshals Service's search efforts in detail. See Defs.' Renewed Mem., Supplemental Declaration ("Marshals Service Decl."). It explains that upon receiving Cooper's initial FOIA request in May 1999, the Marshals Service searched its most routinely utilized databases by inputting Cooper's personal identifying information. See id. ¶ 3. At that time, the agency did not search for documents related to seized assets (which would include the cashier's checks at issue here) because "[s]eized asset records are not routinely searched, unless a requester specifically ask[s] for information on seized assets or there is some indication within other records that assets were seized," and Cooper "did not ask in his initial request for information on seized assets," nor did the "records located and previously released to [Cooper] . . . specify any reference to seized or forfeited property." Id. ¶ 4. It was only when Cooper "provided additional information" during his administrative appeal regarding "a cashier's check [that] was turned over to the [Marshals Service] for forfeiture proceedings" that the Marshals Service was put on notice of the need to search for seized asset records. Id. Upon learning of this lead, the Marshals Service's Office of General Counsel contacted its "seized assets office" in the Southern District of Florida "to conduct a search of its files for responsive records." Id. ¶ 6. The seized assets office then searched for responsive information in the DOJ's Consolidated Asset Tracking System ("CATS"), a database containing information regarding "seized and forfeited property." Id. "Information maintained in the CATS database is primarily retrieved by a CATS identification number, [and] occasionally by a civil action case number, [or] a property description or identification number." Id. ¶ 7. While "in rare instances" information

may be retrieved from the CATS database using an "individual's name," in this case the "seized assets office advised the [Office of General Counsel] that it [was] unable to conduct a search for records in the CATS database under [Cooper's] name." Id. The Office of General Counsel accordingly provided the seized assets office "with the case number, 9:97-8125 CR RYSKAMP, that [Cooper] referenced in his [FOIA] request," but the seized assets office located no records under that case number. Id. Then, by letter dated July 14, 2003, the United States Attorney's Office for the District of Columbia informed the Marshals Service that Cooper's most recent filing in this case "provided further information on additional records pertaining to him; specifically, cashier's checks of monies seized from him." Id. ¶ 8. After receiving this letter, the Marshals Service's seized assets office in the Southern District of Florida conducted another search for records, this time using "additional case numbers referenced in documents previously released to" Cooper; namely, "file numbers 9:97CR08125-002 and 97-5251-AEV." Id. ¶ 9. In contrast to its previous searches, this search yielded "326 pages of asset forfeiture records, including the cashier's checks, responsive to [Cooper's] request." Id.

      This supplemental declaration submitted by the Marshals Service demonstrates that it conducted an adequate search in which it followed reasonable leads. True, the Marshals Service did not initially search for seized asset information. And the Circuit made clear in its first remand decision that Cooper's failure to specifically identify the cashier's checks in his FOIA request did not, by itself, obviate the Marshals Service's duty to search for such information. See Cooper, 2004 WL 895748, at *2 (rejecting the defendants' argument grounded on the premise that "they did not produce the cashier's checks because [Cooper's] FOIA request did not specifically identify the checks" because Cooper's request "sought all records pertaining to his criminal case," the agency "has a duty to construe FOIA requests liberally," and "the agency is

obligated to pursue any 'clear and certain' lead it cannot in good faith ignore" when a requester "seeks all agency records on a given subject" (citations omitted)).  However, whereas the Marshals Service previously did "not explain[] why [Cooper's] request for all records pertaining to his case did not produce the cashier's checks," id., its supplemental declaration states that the Marshals Service does not, as a matter of practice, search for seized asset information unless the requester asks for it or there is some indication in its records that assets were seized.  Defs.' Renewed Mem., Marshals Service Decl. ¶ 4.  Because neither of these conditions was satisfied in Cooper's case, the Marshals Service reasonably explained why it did not search for seized asset information in response to Cooper's FOIA request, and consequently did not uncover the cashier's checks at that time.  See Iturralde, 315 F.3d at 315 ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.").

Furthermore, even if the initial failure to search for seized asset information was unreasonable, the Marshals Service's supplemental declaration shows that it acted diligently in following "clear and certain" leads after receiving additional information from Cooper regarding "a cashier's check [that] was turned over to the [Marshals Service] for forfeiture proceedings." Id. ¶ 4; see Consumer Fed. of Am. v. USDA, 539 F. Supp. 2d 225, 227-28 (D.D.C. 2008) (agency can obtain summary judgment on the adequacy of a FOIA search even where initial search is inadequate, so long as ultimate search efforts are deemed adequate).  This additional information prompted the Marshals Service to search the CATS database using the case number supplied in Cooper's initial FOIA request.  See Defs.' Renewed Mem., Marshals Service Decl. ¶ 6.  Although that search uncovered no responsive records, id. ¶ 7, the Marshals Service subsequently utilized other case numbers associated with Cooper that, when entered in the CATS

database, yielded "326 pages of asset forfeiture records, including the cashier's checks, responsive to [Cooper']s request," id. ¶ 9.  Notably, there is no indication of other case numbers associated with Cooper that may yield additional responsive records when input in the CATS database, or of other potentially relevant systems of records that the Marshals Service has not already searched.

In its second remand order, the Circuit noted that the Marshals Service's "production during this appeal of additional records responsive to [Cooper's FOIA] request . . . casts even more doubt on the adequacy of the [Marshals Service's] initial search."  Order, Cooper v. DOJ, No. 05-5093 (D.C. Cir. Dec. 28, 2005) (per curiam).  Cooper asserts that the defendants have failed to address this issue.  See Pl.'s Reply at 16.  Yet, the Marshals Service's supplemental declaration indicates that the agency was engaged in an ongoing effort to locate responsive documents, conducting further searches and following reasonable leads whenever it learned of new details concerning Cooper's request.  When viewed in light of this declaration (which was produced after the Circuit's second remand), the Marshals Service's production of additional documents to Cooper during the second appeal bolsters, rather than undermines, the conclusion that the agency's search efforts were sufficient and undertaken in good faith.

In short, the Marshals Service's search may not have been perfect, but it has now demonstrated that its search was reasonable.  And its supplemental declaration "explain[s] in reasonable detail the scope and method of the search conducted by the agency," and "suffice[s] to demonstrate compliance with the obligations imposed by the FOIA."  Perry, 684 F.2d at 127.  The supplemental declaration also serves to "rebut[] the evidence presented by [Cooper] that raised a substantial doubt as to the adequacy of the [Marshals Service's] search."  Cooper, 2004

WL 895748, at *2. Accordingly, summary judgment as to the adequacy of the Marshals Service's search for responsive records is granted in the defendants' favor.

**B.      Redactions of Documents Produced by the Marshals Service to Cooper during the Second Appeal**

The Circuit's second remand order also instructed this Court to "address any challenges made by [Cooper] to the redactions associated with th[e] production" of documents disclosed by the Marshals Service during the second appeal. Order, Cooper v. DOJ, No. 05-5093 (D.C. Cir. Dec. 28, 2005) (per curiam).

The Marshals Service withheld information from Cooper pursuant to two FOIA Exemptions: Exemption 2, which protects matters "related solely to the internal personnel rules and practices of an agency," 5 U.S.C. § 552(b)(2), and Exemption 7(C), which covers "records or information compiled for law enforcement purposes . . . to the extent that . . . production. . . could reasonably be expected to constitute an unwarranted invasion of personal privacy," id. § 552(b)(7)(C). See Defs.' Renewed Mem., Marshals Service Decl. ¶¶ 10-15. In Milner v. Dep't of Navy, __ U.S. __, __, 131 S.Ct. 1259, 1266-70 (2011), the Supreme Court abrogated and narrowed the expansive interpretation of FOIA Exemption 2 advanced by the District of Columbia Circuit in Crooker v. ATF, 670 F.2d 1051, 1073 (D.C. Cir. 1981). Recognizing the potential impact of Milner, the defendants state in their opposition brief that "all components have recently been instructed to review the previous withholdings under Exemption 2," and that the defendants "will file supplemental information regarding Exemption 2 as it becomes available." Defs.' Opp'n at 3 n.1. Given these representations, the Court deems it inappropriate at this time to assess the propriety of the Marshals Service's invocation of Exemption 2. Moreover, because the Marshals Service has invoked both Exemptions 2 and 7(C) as to several

documents, see Defs.' Renewed Mem., Marshals Service Decl. ¶ 14, the Court will defer consideration of the Marshals Service's invocation of both exemptions.

**C.    Cooper's Motion to File Supplemental Pleading and to Compel Production of Documents**

Cooper has filed a "Motion for Leave of the Court to File Supplemental Pleading and Compel Producdion [sic] of Documents." ECF No. 98.  Despite its title, this submission does not appear to request leave to file a supplemental pleading, but instead seeks to offer additional arguments in opposition to the defendants' renewed motion for summary judgment. See generally id.  The motion is granted insofar as the Court has considered these additional arguments in adjudicating the parties' cross-motions for summary judgment.  However, the motion also requests "limited discovery for [the] purpose of exploring the disputed documents via [a] hearing or interrogatories." Id. at 12.  Insofar as it requests this relief, the motion is denied because "'[d]iscovery in FOIA is rare and should be denied where,'" as here, "'an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains,'" and there is no evidence of "bad faith" on the agency's part. Baker & Hostetler LLP, 473 F.3d at 178 (quoting Schrecker v. DOJ, 217 F. Supp. 2d 29, 35 (D.D.C. 2002)).

## IV.  CONCLUSION

For the foregoing reasons, the defendants' renewed motion for summary judgment is granted in part and denied in part without prejudice, Cooper's renewed cross-motion for summary judgment is denied without prejudice, and Cooper's Motion for Leave and to Compel is granted in part and denied in part.

**SO ORDERED** this 11th day of September, 2012.[3]

REGGIE B. WALTON<br>
United States District Judge

---

[3] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.