**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                                    )
ELWOOD J. COOPER,                                   )
                                                    )
        Plaintiff,                           )
                                                    )
        v.                                   )      Civil Action No. 99-2513 (RBW)
                                                    )
UNITED STATES DEPARTMENT OF                         )
JUSTICE, <u>et al.</u>,                             )
                                                    )
        Defendants.                          )
_____)

**MEMORANDUM OPINION**

Elwood J. Cooper ("the plaintiff"), proceeding <u>pro se</u>, brings this action against several

federal agencies ("the defendants") under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552 (2012).  The plaintiff seeks "to obtain all records related to his arrest and prosecution, in the

hopes of uncovering documents that he believes will prove that . . . his conviction was illegal."

<u>Cooper v. DOJ</u>, No. CIV.A. 99-2513 (RMU), 2005 WL 670296, at *1 (D.D.C. Mar. 22, 2005).

Five motions are currently pending before the Court: (1) the defendants' Second Renewed

Motion for Summary Judgment ("Second Summary Judgment Motion"); (2) the plaintiff's

Second Cross-Motion for Summary Judgment in Opposition to Defendants' Second Renewed

Motion for Summary Judgment ("Second Cross-Motion for Summary Judgment"); (3) the

defendants' Motion for Extension of Time to File Reply and Opposition to Plaintiff's Second

Cross-Motion for Summary Judgment ("Motion for Extension of Time to File Reply Brief"); (4)

the plaintiff's Motion for Entry of an Order Granting Cross-Judgment as Conceded or, in the

Alternative, Discovery as a Matter of Law and Cause ("Motion to Concede"); and (5) the

plaintiff's Motion for Enlargement Out of Time Having Expired ("Motion to Enlarge Time").[1]

Upon careful consideration of the parties' submissions and the entire record in this case, the

Court concludes that it must grant in part the defendants' Second Summary Judgment Motion,

deny the plaintiff's Second Cross-Motion for Summary Judgment, grant, nunc pro tunc, the

---

[1] This footnote serves to shed light on why earlier rulings on these motions were not rendered. This case was randomly assigned to the undersigned in April 2012. On June 25, 2012, the Court issued an order that administratively closed the case pending further order of the Court. The record does not reflect why the case was closed. Subsequently, the Court ruled on the parties' original cross-motions for summary judgment. However, while the Court's decision largely granted summary judgment to the defendants, an issue remained for the parties to brief.

To that end, the parties filed the pending Cross-Motions for Summary Judgment in July and September of 2013. However, because the defendants did not receive the plaintiff's Cross-Motion for Summary Judgment in a timely manner, the defendants filed the pending Motion for Extension of Time to File Reply Brief. On September 27, 2013, oblivious to the fact that the defendants received his Cross-Motion for Summary Judgment late, the plaintiff filed the pending Motion to Concede.

While these four motions were pending, and before the parties had finished briefing the motions, on October 2, 2013, the defendants filed their "Motion to Stay in Light of Lapse of Appropriations," Defs.' Mot. to Stay, which the Court references as "Motion to Stay." In their Motion to Stay, the defendants' counsel represented that certain defendants could not work on FOIA matters due to a lapse in government appropriations. Id. at 1–2. Therefore, the defendants requested that "all current deadlines for the parties be extended commensurate with the duration of the lapse in appropriations." Id. at 2.

In an order entered on October 7, 2013, the Court granted the Motion to Stay. The October 7, 2013 order provided that "all deadlines in this case shall be extended for a period commensurate with the duration of the lapse in appropriations."

The defendants thereafter filed their reply brief on October 27, 2013. However, the defendants did not notify the Court that the lapse in appropriations had previously ended and that the stay should be lifted.

The Court became aware of this oversight and, in a minute order entered on May 14, 2015, promptly notified the parties to provide status reports. In that minute order, the Court noted that the "case [had] been administratively closed since June 25, 2012, without the parties, particularly the defendants, advising the Court that it should be reopened."

The history of events the Court has been able to reconstruct fails to elucidate why rulings were not rendered on these four motions in a timelier fashion. It may be that, because the case was stayed and administratively closed in June 2012, the four motions were never properly activated on the docket and, therefore, went unnoticed. However, this theory does not explain how the Court was able to rule on other motions that the parties filed after June 2012. An alternative explanation is that, when the Court stayed all deadlines in the case for a period commensurate with the lapse in appropriations, these four motions were inadvertently deactivated. If this is the case, it is easier to see (1) how they might have gone unnoticed by the Court; and (2) how this unfortunate occurrence could have been avoided had the parties, particularly the defendants, notified the Court that the lapse in appropriations had ended and that the stay could be lifted. In any event, the Court regrets the delay and has to take responsibility for it.

defendants' Motion for Extension of Time to File Reply Brief, deny the plaintiff's Motion to

Concede, and grant, nunc pro tunc, the plaintiff's Motion to Enlarge Time.[2]

## I.    BACKGROUND

Originally filed in September 1999, this case has a long and complicated procedural

history.  In setting forth the relevant factual and procedural background, the Court draws heavily

on prior opinions and orders issued in this case.

The plaintiff is "currently incarcerated at the U.S. Penitentiary in Coleman, Florida,

where he is serving a life sentence after being convicted of drug trafficking offenses in the

United States District Court for the Southern District of Florida." Cooper v. DOJ, 890 F. Supp.

2d 55, 58 (D.D.C. 2012) (citation omitted).  On May 3, 1999, the plaintiff "submitted separate

FOIA requests to the Drug Enforcement Administration ("DEA"), the United States Customs

Service ("Customs"), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and

the United States Marshals Service ("Marshals Service")." Id.  The plaintiff sought records

"concerning his arrest and prosecution." Id.  These agencies processed the plaintiff's request and

---

[2]  In addition to the documents previously referenced, the Court considered the following submissions in reaching its decision: (1) the defendants' September 19, 2005 Letter ("Sept. 2005 Ltr."); (2) the District of Columbia Circuit's Second Remand Order ("Second Remand Order"); (3) the Court's September 11, 2012 Opinion ("Sept. 2012 Op."); (4) the Court's June 20, 2013 Order ("June 2013 Order"); (5) the defendants' Supplemental Declaration of William E. Bordley ("First Supp. Bordley Decl."); (6) the defendants' Supplemental Declaration of Leila I. Wassom ("Supp. Wassom Decl."); (7) the defendants' Second Supplemental Declaration of William E. Bordley ("Second Supp. Bordley Decl."); (8) the defendants' Declaration of William C. Little, Jr. ("Little Decl."); (9) the defendants' Motion to Stay in Light of Lapse of Appropriations  ("Defs.' Mot. to Stay"); (10) the defendants' Status Report ("Defs.' Stat. Rep."); (11) the plaintiff's Status Report ("Pl.'s Stat. Rep."); (12) the defendants' September 19, 2005 Letter, Exhibit 1 ("Sept. 2005 Ltr., Ex. 1"); (13) the defendants' Statement of Material Facts not in Genuine Dispute with Respect to Second Renewed Motion for Summary Judgment ("Defs.' State. of Mat. Facts"); (14) the plaintiff's Notice of Filing and Intent to Reply in Opposition to Defendants' Renewed Motion for Summary Judgment and to Permit Limited Discovery ("Pl.'s Mot. & Intent Reply Opp'n to Defs.' First Mot. Summ J."); (15) the plaintiff's Motion for Reconsideration and/or to Alter or Amend the Court's September 11, 2012 Order and Memorandum ("Pl.'s Mot. to Recon. Sept. 2012 Order & Mem."); (16) the defendants' Second Supplemental Declaration of William E. Bordley, Exhibit A ("Second Supp. Bordley Decl., Ex. A"); (17) the defendants' Supplemental Declaration of Leila I. Wassom, Exhibit H ("Supp. Wassom Decl., Ex. H"); and (18) the defendants' Reply in Support of Second Renewed Motion for Summary Judgment and Oppositions to Plaintiff's Cross-Motion for Summary Judgment and for Discovery ("Defs.' Reply to Pl.'s Second Cross-Mot. for Summ. J.").

released to him the documents that they deemed "not subject to various [FOIA] exemptions." Id. (alteration in original) (internal quotation marks omitted).  However, the same agencies released other documents "with redactions corresponding to applicable exemptions" under the FOIA.  Id. at 59 (internal quotation marks omitted).

On May 28, 2003, Judge Thomas Penfield Jackson, a former member of this Court, found that the agencies had "fully compiled with their FOIA obligations in responding to [the plaintiff's] requests."  Id. (internal quotation marks omitted).  Therefore, Judge Jackson "granted [the defendants'] motions for summary judgment."  Id.  The plaintiff appealed and, on April 23, 2004, "the District of Columbia Circuit vacated Judge Jackson's order and remanded the case to this Court."  Id. (citing Cooper v. DOJ, No. 03–5172, 2004 WL 895748, at *1 (D.C. Cir. Apr. 23, 2004) (per curiam)).  The Circuit's decision concerned only "the search for records conducted by the Marshals Service."  Id. (citation omitted).  The Circuit held that the Marshals Service did not comply with the FOIA because it failed to conduct an adequate search for certain "cashier's checks" of whose existence the plaintiff "offer[ed] proof."  Id.  (citation omitted).

On remand, "Judge Jackson scheduled a status conference for July 13, 2004."  Id. (citation omitted).  However, none of the parties appeared.  Consequently, "Judge Jackson dismissed the case from the bench because the cashier's checks in dispute had been turned over to [the plaintiff]."  Id.  (citation and internal quotation marks omitted).  On October 28, 2004, "this case was randomly reassigned to Judge Ricardo Urbina, another former member of this Court," following Judge Jackson's retirement.  Id. at 60.  In March 2005, Judge Urbina denied the plaintiff's two motions "seeking reconsideration of Judge Jackson's dismissal order."  Id. (citing Cooper, 2005 WL 670296, at *1–3).

"Cooper again appealed the dismissal of his case to the Circuit on March 28, 2005." Id. at 60. In September 2005, while the plaintiff's second appeal was pending, "the Marshals Service and DEA made additional documents relating to the cashier's checks available to [him]." Id. (internal quotation marks omitted). "According to the defendants, this release of records resulted from a search by the [Marshals Service] for three cashier's checks [conducted] in response to the Circuit's first remand in April 2004." Id. (alteration in original) (internal quotation marks omitted). These documents, according to the defendants' counsel, included "eighty-four (84) pages from the [Marshals Service] plus 102 pages referred to the [DEA] for processing."[3] Sept. 2005 Ltr. at 1. The defendants' counsel further stated that "[r]edactions have been made to some of the other documents pursuant to [FOIA Exemptions 2 and 7]." Id.

On December 28, 2005, the Circuit "vacated Judge Jackson's July 13, 2004 dismissal order" and remanded the case for the second time. Cooper, 890 F. Supp. 2d at 60 (citing Second Remand Order). The Circuit's second remand order instructed that, "[o]n remand, the district court shall reevaluate the adequacy of the United States Marshals Service's . . . search for records in general." Second Remand Order at 1. In so ruling, the Circuit reasoned that the United States Marshals Service's production of "additional records responsive" to the plaintiff's FOIA request during the pendency of his second appeal "cast[ed] even more doubt on the adequacy" of the Marshals Service's initial search. Id. The Circuit further instructed this Court to "address any challenges made by the [plaintiff] to the redactions associated with this production." Id.

---

[3] There is some confusion in the record as to whether the number of pages is eighty-three or eighty-four. Compare Sept. 2005 Ltr. at 1, with Supp. Bordley Decl. ¶ 10 (suggesting that the true number is eighty-three). The plaintiff indicates that the correct number is eighty-four. Pl.'s Second Cross-Mot. for Summ. J. at 1 & ¶¶ 1, 3–4. Therefore, the Court will assume that the number is eighty-four. In any event, whether the correct number is eighty-three or eighty-four is immaterial to the Court's analysis.

Following the Circuit's second remand, "the parties filed renewed cross-motions for summary judgment." Cooper, 890 F. Supp. 2d at 60.  "On April 20, 2012, this case was randomly reassigned to the undersigned member of the Court upon Judge Urbina's retirement." Id.

On September 11, 2012, this Court issued an opinion granting in part the defendants' renewed motion for summary judgment.  Sept. 2012 Op.  Regarding the adequacy of the Marshals Service's search, the Court held that the Marshals Service "demonstrated that its search was reasonable." Cooper, 890 F. Supp. 2d at 64.  However, the Court decided to "defer consideration" of the challenges that the plaintiff made to the defendants' redactions of the documents released during his second appeal. Id. at 65.  The Court came to this conclusion because, in part, the defendants justified these redactions on "[FOIA] Exemption 2 [grounds], which protects matters related solely to the internal personnel rules and practices of an agency." Id. at 64 (internal quotation marks omitted) (citing 5 U.S.C. § 552(b)(2)).  But, the defendants stated that "all components have recently been instructed to review the previous withholdings under Exemption 2" in light of the Supreme Court's decision in Milner v. Dep't of Navy, 562 U.S. 562, 569 (2011). Id. at 65.  In Milner, "the Supreme Court abrogated and narrowed the expansive interpretation of FOIA Exemption 2 advanced by the District of Columbia Circuit in Crooker v. ATF, 670 F.2d 1051, 1073 (D.C. Cir. 1981)." Id. at 64.  Therefore, the defendants stated that they would "file supplemental information regarding Exemption 2 as it [became] available." Id. at 65 (internal quotation marks omitted).  In view of these developments, the Court deemed it "inappropriate at [that] time to assess the propriety of the Marshals Service's invocation of Exemption 2." Id.  Additionally, because the Marshals Service invoked both

Exemptions 2 and 7 for several documents, "the Court . . . [deferred] consideration of the Marshals Service's invocation of <u>both</u> exemptions." <u>Id.</u>

Subsequently, the Court issued a briefing schedule concerning the sole remaining issue, i.e., the "redactions made to the additional documents produced to the plaintiff in September 2005." June 2013 Order at 10. According to the briefing schedule, the defendants were required to submit their Second Summary Judgment Motion "on or before July 22, 2013," <u>id.</u>, the plaintiff had to file his Second Cross-Motion for Summary Judgment "on or before August 22, 2013," <u>id.</u>, and the defendants had to file their reply brief "on or before September 5, 2013," <u>id.</u>

On July 22, 2013, the defendants filed their Second Summary Judgment Motion. Defs.' Second Summ. J. Mot. In this filing, in light of <u>Milner</u>, the defendants expressly abandoned Exemption 2 as a justification for their redactions and "[relied] on only Exemptions 7(C), 7(D), 7(E)[,] and 7(F)." <u>Id.</u> at 3. As a general matter, Exemption 7 protects certain categories of "records or information compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7) (2012).

To support their Second Summary Judgment Motion, the defendants rely on the following declarations: "[1] [the] Supplemental Declaration of William E. Bordley, [hereinafter, "the first supplemental Bordley declaration"], [2] the Supplemental Declaration of Leila I. Wassom [hereinafter, "the supplemental Wassom declaration"] . . . , [3] the Second Supplemental Declaration of William E. Bordley [hereinafter, "the second supplemental Bordley declaration"], and [4] the Declaration of William C. Little, Jr. [hereinafter, "the Little declaration"] . . . ." Defs.' Second Summ. J. Mot. at 1. These declarations provide necessary background information regarding the plaintiff's FOIA requests and the defendants' responses to them.

Bordley is the Marshals Service's "Associate General Counsel and Freedom of Information/Privacy Act Officer."  First Supp. Bordley Decl. ¶ 1.  His first supplemental declaration discusses, inter alia, the eighty-four documents that the Marshals Service produced to the plaintiff in September 2005.  See id. ¶ 10.  According to the declaration, the Marshals Service applied Exemption 2 to these documents to redact "case numbers used by investigative agencies to link particular asset records with ongoing investigation or litigation."  Id. ¶ 11.  Additionally, regarding the same documents, the declaration states that the Marshals Service relied on Exemption 7(C) "to withhold the names and telephone numbers [of] law enforcement officers and other government employees and third-party individuals."  Id. ¶ 12.  However, the second supplemental Bordley declaration states that, on August 28, 2012, the Marshals Service "made a supplemental release of . . . [documents] consisting of the administrative markings and internal case numbers that were previously withheld pursuant to Exemption 2."  Second Supp. Bordley Decl. ¶ 3.  According to Bordley, the Marshals Service took this action "in light of the Supreme Court decision in Milner."  Id. ¶ 2.

Wassom is a DEA "Paralegal Specialist" who reviews FOIA "requests received by [the] DEA."  Supp. Wassom Decl. ¶¶ 1–2.  The supplemental Wassom declaration discusses, inter alia, the 102 documents made available to the plaintiff while his second appeal to the Circuit was pending.  Id. ¶¶ 7–8.  Wassom states that several of these documents "contain 'violator identifiers' consisting of G-DEP (Geographical Drug Enforcement Program) codes."[4]  Id. ¶ 38.  She further states that G violator codes "are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal

---

[4]  The Court will refer to the G-DEP codes as "G violator codes."

activity."  Id. ¶ 39.  Wassom adds that, pursuant to Exemption 2, the DEA "withheld" the G

violator codes on "a few" of these documents.  Id. ¶¶ 38, 40.  Beyond that, the declaration cites

Exemption 7 to justify the redaction of the "identities of DEA Special Agents, other Federal,

state/local law enforcement officers, and attorneys."  Id. ¶ 46; see also ¶¶ 43–45, 47–49, 55–58.

In the same declaration, Wassom also relies on Exemption 7 to support the decision to withhold

"in their entirety" a handful of documents containing "information about a confidential source

and his/her drug-related interaction with third parties."  Id. ¶¶ 53–54.

        The last declarant, Little, is a DEA "attorney whose primary responsibilities are matters

involving [FOIA] . . . litigation in which [the] DEA is an interested party."  Little Decl. ¶ 3.

Little states that, in its September 11, 2012 Order, the Court directed "the review of withholding

in this case pursuant to FOIA Exemption [2]."  Id. ¶ 10.  In response to the order, Little declares

that the "DEA is no longer asserting FOIA Exemption [2] and is asserting FOIA Exemption [7]

to withhold violator codes," id. ¶ 11, which the Little declaration states includes "NADDIS

numbers,"[5] id. ¶ 15.  According to Little, "[N violator codes] are multi-digit numbers assigned

to drug violators and suspected drug violators known to [the] DEA and entities that are of

investigative interest."  Id. ¶ 19.  Little further declares that the violator codes[6] "are part of [the]

DEA's internal system of identifying information and individuals in furtherance of [the] DEA's

enforcement responsibilities," and that "[t]hese numbers and codes reflect procedures prescribed

by the DEA Agents Manual."  Id. ¶ 16.  Little then generally asserts that the violator codes fall

under Exemption 7 because releasing them would "thwart the DEA's investigative and law

enforcement efforts."  Id. ¶ 20.  More specifically, Little declares that:

---

[5]  The Court will refer to the NADDIS numbers hereafter as "N violator codes."

[6]  Unless otherwise noted, the term "violator codes" refers to G violator codes and N violator codes collectively.

The release of [G violator codes] would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings.  Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined [the] DEA knows about them or avoid detection and apprehension and create excuses for suspected activities. . . .

[N violator codes] . . . are unique and personal to the individual to whom the number applies.  Because of the manner in which [N violator codes] are assigned and methods for which they are used, release of the information could allow violators to avoid apprehension, and could place law enforcement personnel or informants in danger, since many details of a DEA investigation would be disclosed.  If these details of DEA investigations were known, violators would be aware of how to respond in different situations where detection and/or apprehension are eminent.  They would be able to respond in a manner that would help them avoid detection and arrest.

Id. ¶¶ 20–21.

On August 22, 2013, the plaintiff submitted his Second Cross-Motion for Summary Judgment by mailing it through the prison mail system.  Pl.'s Second Cross-Mot. for Summ. J.; see also Defs.' Mot. Ext. Time to File Reply Br. ("Defs.' Mot. Ext. Time Reply") at 1; Pl.'s Mot. to Concede at 3.  However, the defendants did not receive the plaintiff's Second Cross-Motion for Summary Judgment until sometime around September 13, 2013,  Defs.' Mot. Ext. Time Reply at 1; Pl.'s Mot. to Concede at 3, which was after the filing deadline of September 5, 2013 by which the defendants had to oppose the plaintiff's Second Cross-Motion for Summary Judgment and reply in support of their own Second Summary Judgment Motion.  The defendants then sought an extension of time to file their reply brief,  Defs.' Mot. Ext. Time Reply, requesting that the Court extend the deadline for filing their reply brief to "October 7, 2013," so that they would have "a reasonable amount of time to prepare an appropriate reply,"  id. at 1.

On September 27, 2013, the plaintiff filed his Motion to Concede.  Pl.'s Motion Concede. In this motion, the plaintiff sought the entry of an order granting his Second Cross-Motion for Summary Judgment "as conceded" under Local Civil Rule 7(b).  As support for this request, the

10

plaintiff asserted that the defendants "failed to file a timely reply" to his Second Cross-Motion for Summary Judgment.  Id. at 1.

On October 2, 2013, the defendants filed their Motion to Stay, Defs.' Mot. Stay, in which their counsel represented that "Department of Justice attorneys and employees of the [Marshals Service] and the [DEA]" were "prohibited from working" on FOIA matters due to the lapse of government appropriations.  Id. at 1–2.  Therefore, the defendants requested that "all current deadlines for the parties be extended commensurate with the duration of the lapse in appropriations."  Id. at 2.  The defendants further asked the Court to refrain from "setting any automatic deadlines" so that they could "make sure that necessary coordination and review [could] be accomplished in the wake of the current [government] shutdown."  Id. at 2–3.  In an order entered on October 7, 2013, the Court granted the Motion to Stay, Oct. 7, 2013 Order,[7] ordering that "all deadlines in this case shall be extended for a period commensurate with the duration of the lapse in appropriations," id.  Without notifying the Court that the lapse in appropriations had ended, the defendants filed their reply brief on October 27, 2013.

After the defendants filed the reply brief, no action was taken in the case for approximately 1.5 years.[8]  Then, on May 15, 2015, the Court issued a minute order directing the parties to file a status report "advising the Court as to whether the case should be reopened and whether the pending motions are still valid or have been resolved and thus are moot."  May 2015 Minute Order.  The defendants responded to the Court's minute order on May 29, 2015, stating

---

[7]  The October 7, 2013 Order was entered as a minute order, whose content appears as text on the docket, as opposed to a separate document, and is not associated with a specific docket number.

[8]  As explained in footnote 1, the record does not fully reflect why action was not taken to resolve the motions earlier.  However, the Court is ultimately responsible for the delay.

that they were "unaware of any developments in this case . . . that would render the pending

motions moot." Defs.' Stat. Rep. at 1.

On June 4, 2015, the plaintiff filed his Motion to Enlarge Time, Pl.'s Mot. to Enlarge

Time, asking that the Court extend the deadline to file "his status report as to whether this case

should be reopened" to June 15, 2015, id. at 1.  Approximately one month later, while his

Motion to Enlarge Time was pending, the plaintiff filed his status report.  Pl.'s Stat. Rep.

## II.    STANDARD OF REVIEW

"FOIA cases typically and appropriately are decided on motions for summary judgment."

Defenders of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citations

omitted).  Courts will grant summary judgment to an agency as the movant if it shows that there

is no genuine dispute as to any material fact and if the agency is entitled to judgment as a matter

of law.  Fed. R. Civ. P. 56(a).  More specifically, in a FOIA action to compel production of

agency records, the agency "is entitled to summary judgment if no material facts are in dispute

and if it demonstrates 'that each document that falls within the class requested either has been

produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'"  Students

Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting Goland v. CIA,

607 F.2d 339, 352 (D.C. Cir. 1978)).

Summary judgment in a FOIA case may be based solely on information provided in an

agency's supporting affidavits or declarations if they are "relatively detailed and non-

conclusory," SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation and

internal quotation marks omitted), and when they "[d]escribe the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record [or] by evidence of agency bad faith," <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 738 (D.C. Cir. 1981). "To successfully challenge an agency's showing that it compiled with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." <u>Span v. DOJ</u>, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting <u>DOJ v. Tax Analysts</u>, 492 U.S. 136, 142 (1989)).

## III.   ANALYSIS

**A.   Cross-Motions for Summary Judgment**

   <u>1.   The parties' arguments</u>

   The only remaining issue for the Court to resolve in this case is the propriety of the "redactions made to the additional documents produced to the plaintiff in September 2005." June 2013 Order at 10. The Court deferred consideration of this issue so that the defendants could review their previous withholdings under Exemption 2 in light of <u>Milner</u>. According to the defendants, the Marshals Service later "released all the information over which it had previously asserted Exemption 2." Defs.' Second Summ. J. Mot. at 2. Likewise, although the DEA had asserted Exemption 2 over "a few" violator codes, Supp. Wassom Decl. ¶ 38, the Little declaration states that the "DEA is no longer asserting [Exemption 2] . . . to withhold violator codes," Little Decl. ¶ 11. Therefore, the narrower issue for the Court to address is whether Exemption 7 justifies the defendants' redactions to the subject documents.

   The redactions fall into three general categories of information. The first category includes documents revealing the "names and telephone numbers" and "identities" of "law enforcement officers," "government employees," "attorneys," and "third-party individuals." First Supp. Bordley Decl. ¶ 12; Supp. Wassom Decl. ¶¶ 43–49. The second category pertains to

the violator codes.  See supra at pp. 8–10 (describing G and N violator codes).  The final

category encompasses documents containing "information about a confidential source and

his/her drug-related interaction with third parties."  Supp. Wassom Decl.  ¶¶ 53–54.

The defendants argue that Exemption 7 applies to all three categories of redactions,

asserting generally that the documents at issue were "compiled for law enforcement purposes."

5 U.S.C. § 552(b)(7) (2012).  Then, as to category one, the defendants argue that Exemption 7(C)

"was appropriately applied in this case to protect names and personal identifying information of

individuals,"  Defs.' Second Summ. J. Mot. at 7,  and that the DEA properly applied Exemption

7(F) "to further ensure protection of the identifying information and safety of individuals

associated with its investigation of [the] plaintiff's violent activities," id. at 9.  As for category

two, the defendants assert that Exemption 7(E) applies to the violator codes.  Id. at 10.  In

regards to the third category, the defendants argue that Exemptions 7(D) and (F) justify the

withholding of documents that "would reveal the identify and information provided by a

confidential source."  Id. at 9.  The defendants complete their argument by asserting that they

disclosed "all reasonably segregable" information based on their "limited and careful excision of

[exempt] material."  Id. at 12.

The plaintiff's Second Cross-Motion for Summary Judgment "stray[s] well outside the

limited issue on which the Court requested briefing," Defs.' Reply to Pl.'s Second Cross-Mot.

for Summ. J. at 1, and rehashes arguments that the Court has already rejected.  The Court distills

the plaintiff's voluminous and unfocused arguments into four core contentions.  The first is that

the defendants have failed to produce various allegedly responsive documents.  See generally

Pl.'s Second Cross-Mot. for Summ. J. ¶¶ 2–15.  For instance, the plaintiff asserts that the

Marshals Service "has not rebutted evidence presented by [him] of its withholding of additional

U.S. Treasury checks."  Id. ¶ 2; see also id. ¶ 11.  The plaintiff also asserts that the DEA's search was insufficient because it did "not [account] for 8 pages of documents[s] referred to it by [the] ATF  . . . or the 39 page[s] from Customs . . . ."  Id. ¶ 7.  Further, the plaintiff asserts that he "did not [receive] 10 photographs sent to him by [the] DEA."  Id. ¶ 15.  Additionally, the plaintiff asserts that he "is entitled to full disclosure" of the DOJ's purportedly "belated processing of 10,500 . . . documents subsequent to [the] second remand of this case."  Id. ¶ 10.

The plaintiff's second core contention is that the Court erred in its September 11, 2012 opinion.  Specifically, the plaintiff contends that the Court improperly "focus[ed] exclusively on the adequacy" of the Marshals Service's search for responsive records in response to the Circuit's second remand order.  Id. at 4.  But the second remand order instructed the Court to "reevaluate the adequacy of the . . . Marshals Service's . . . search for records," Second Remand Order at 1, and "did not instruct this Court to separately examine the adequacy of the DEA's search for records," June 2013 Order at 5.  The plaintiff appears to dispute this characterization of the second remand order, asserting that it directed "all defendants to re-review their prior withholding[s] in this case under . . . Exemption 2."  Pl.'s Second Cross-Mot. for Summ. J. at 11.

The third core contention is that the defendants have not produced certain documents that they purportedly produced.  For instance, the plaintiff suggests that the Marshals Service provided him with only "65 pages" of the eighty-four documents that it concluded were appropriate to release while his second appeal was pending.  Id. ¶ 3.  However, the plaintiff also states in his Second Cross-Motion for Summary Judgment that counsel for the defendants "made additional documents available to [him] (84 pages on behalf of [the Marshals Service] . . .) while the second appeal . . . was pending."  Id. ¶ 1.  Similarly, the plaintiff asserts that he has yet to receive thirty-nine "pages of documents [that the Marshals Service allegedly] . . . sent to him on

August 28, 2012." Id. ¶ 5.  Therefore, the plaintiff concludes that he lacks "sufficient

information to justify the sufficiency" of the Marshals Service's "Exemption 2 re-review of these

documents." Id.

The plaintiff's fourth, and final, core contention is the only one that addresses the subject

of redaction.  However, instead of discussing the defendants' redactions of the documents

released in September 2005, he asserts that the "DEA has not yet . . . provided justification for

redactions made to 13 pages of documents it released . . . on January 3, 2000." Id. ¶ 7.

By and large, the Court agrees with the defendants that they properly redacted the

September 2005 documents.  Furthermore, the plaintiff's core contentions clearly lack merit.

Therefore, as explained more fully below, the Court grants in part the defendants' Second

Summary Judgment Motion and denies the plaintiff's Second Cross-Motion for Summary

Judgment.

> 2.      Legal analysis

When Congress enacted the FOIA, "it set[ ] forth a policy of broad disclosure of

Government documents in order to ensure an informed citizenry, vital to the functioning of a

democratic society." Critical Mass Energy Project v. Nuclear Regulatory Comm'n, 975 F.2d

871, 872 (D.C. Cir. 1992) (internal quotation marks omitted) (citing FBI v. Abramson, 456 U.S.

615, 621 (1982)).  "At the same time, however, Congress realized that legitimate governmental

and private interests could be harmed by release of certain types of information." Id. (internal

quotation marks omitted) (citing Abramson, 456 U.S. at 621).  "Balancing these private and

public interests, Congress enacted nine exemptions to [the] FOIA." Id.

"The agency bears the burden of establishing that a claimed exemption applies." Citizens

for Responsibility & Ethics in Wash. v. DOJ, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (citations

omitted).  "The agency may carry that burden by submitting affidavits that describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Id. (citation and internal quotation marks omitted).  "Agency affidavits sometimes take the form of a 'Vaughn index,' but there is no fixed rule establishing what such an affidavit must look like[.]"  Id. (citations and some internal quotation marks omitted).

"At times, the FOIA litigation process threatens to reveal the very information the agency hopes to protect and therefore it may be necessary for the agency affidavit to contain only brief or categorical descriptions of the withheld information."  Id. (citations and internal quotation marks omitted).  "In such circumstances, the government need not justify its withholdings document-by-document; it may instead do so category-of-document by category-of-document, so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether the specific claimed exemptions are properly applied."  Id. (citations and internal quotation marks omitted).  However, categorical designations may be employed "[o]nly when the range of circumstances included in the category 'characteristically support[s] an inference' that the statutory requirements for exemption are satisfied."  Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 893 (D.C. Cir. 1995) (quoting United States v. Landano, 508 U.S. 165, 176–80 (1993)).

The applicability of Exemption 7 is at issue here, which protects from disclosure "records or information compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7) (2012).  However, Exemption 7 "exempts such documents from disclosure only to the extent that production of the information might be expected to produce one of six specified harms."  Keys v. DOJ, 830 F.2d

337, 340 (D.C. Cir. 1987) (citing 5 U.S.C. § 552(b)(7)(A)–(F)).  "Thus, in order to prevail on an

[E]xemption 7 claim, the government must bear its burden of demonstrating both the threshold

law enforcement purpose and the danger that at least one of the specified harms would flow from

disclosure."  Id. (citing Abramson, 456 U.S. at 622).  Furthermore, "if a requested record

contains information that is exempt from disclosure under one of the FOIA exemptions, '[a]ny

reasonably segregable portion of a record shall be provided to any person requesting such record

after deletion of the portions which are exempt.'"  Trans-Pac. Policing Agreement v. U.S.

Customs Serv., 177 F.3d 1022, 1026–27 (D.C. Cir. 1999) (quoting 5 U.S.C. § 552(b)).

     In this case, the Court's Exemption 7 analysis proceeds as follows.  First, the Court

addresses the threshold requirement that the information be compiled for law enforcement

purposes.  Second, the Court assesses the applicability of specific Exemptions (e.g., 7(C), 7(D))

to the redactions challenged by the plaintiff.  Third, the Court addresses the issue of

segregability.  Lastly, the Court considers the plaintiff's core contentions.

     a.    The defendants' compiled their records for law enforcement purposes

     Exemption 7 applies only to "records or information compiled for law enforcement

purposes."  5 U.S.C. § 552(b)(7) (2012).  "[T]he term 'compiled' in Exemption 7 requires that a

document be created, gathered, or used by an agency for law enforcement purposes at some time

before the agency invokes the exemption."  Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland

Sec., 777 F.3d 518, 522 (D.C. Cir. 2015) (alteration in original) (citation and some internal

quotation marks omitted), cert. denied, No. 15-196, 2016 WL 100369 (U.S. Jan. 11, 2016).

Records or information are compiled for law enforcement purposes where "the investigatory

activity that gave rise to the documents is related to the enforcement of federal laws, and there is

a rational nexus between the investigation at issue and the agency's law enforcement duties."

Jefferson v. DOJ, 284 F.3d 172, 177 (D.C. Cir. 2002) (citation and internal quotation marks omitted).  A "criminal law enforcement agency['s] invocation of law enforcement purposes warrants greater deference than do like claims by other agencies.  Keys, 830 F.2d at 340 (alteration in original) (citation and internal quotation marks omitted); see also Campbell v. DOJ, 164 F.3d 20, 32 (D.C. Cir. 1998) (citation omitted) (stating that the decision of an agency that "specializes in law enforcement . . . to invoke [E]xemption 7 is entitled to deference").  Moreover, the records or information need not have been "compiled in the course of a specific investigation."  Tax Analysts, 294 F.3d at 79 (citation omitted).  And "an agency may seek to block the disclosure of internal agency materials relating to guidelines, techniques, sources, and procedures for law enforcement investigations and prosecutions, even when the materials have not been compiled in the course of a specific investigation."  Id. (citation omitted).

Here, the defendants compiled the documents released in September 2005 for law enforcement purposes.  The documents were initially created, gathered, and used by the government in the 1997–1999 period, which comes well before the defendants' September 2005 invocation of the FOIA to justify their redactions.  See generally Sept. 2005 Ltr., Ex. 1. Furthermore, the plaintiff brought this case to obtain records "concerning his arrest and prosecution," Cooper, 890 F. Supp. 2d at 58, and the documents in question are directly related to those events, see generally Sept. 2005 Ltr., Ex. 1.  Additionally, all the agencies from which the plaintiff seeks to obtain documents are law enforcement agencies for purposes of the FOIA.[9] Therefore, the defendants' decision to invoke Exemption 7 is entitled to a measure of deference.

---

[9] See Karantsalis v. DOJ, 635 F.3d 497, 502 (11th Cir. 2011) (stating that "the Marshals Service is a law enforcement agency"); Armstrong v. Exec. Office of the President, 97 F.3d 575, 582 n.3 (D.C. Cir. 1996) (characterizing the ATF and DEA as "enforcement agencies"); Nation Magazine, 71 F.3d at 894 (referring to Customs' "law enforcement duties").

Accordingly, there is no genuine dispute of material fact regarding whether the defendants compiled the September 2005 documents for law enforcement purposes.

        b.     Category 1 Redactions

The defendants' category one redactions include documents revealing the "names and telephone numbers" and "identities" of "law enforcement officers," "government employees," "attorneys," and "third-party individuals." <u>See</u> First Supp. Bordley Decl. ¶ 12; Supp. Wassom Decl. ¶¶ 43–49. The defendants argue that Exemptions 7(C) and (F) protect this category of information. The Court agrees that Exemption 7(C) protects this category of information and, therefore, the Court need not consider the applicability of Exemption 7(F).

Exemption 7(C) protects "records or information compiled for law enforcement purposes" from disclosure where disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C) (2012). Under Exemption 7(C), courts must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." <u>Davis v. DOJ</u>, 968 F.2d 1276, 1281 (D.C. Cir. 1992) (citations omitted).

In terms of privacy, Exemption 7(C) confers broad privacy rights to people involved in law enforcement investigations. "There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm." <u>Senate of P.R</u>. ex rel. <u>Judiciary Comm. v. DOJ</u>, 823 F.2d 574, 588 (D.C. Cir. 1987) (citations omitted). Moreover, given its breadth, Exemption 7(C) also applies to "[o]ther persons involved in the investigation." <u>Id.</u> (citations omitted). These other persons are not limited to private citizens such as witnesses, informants, and third-party

individuals.[10]  Rather, Exemption 7(C) typically applies to all persons that "have a substantial interest in seeing that their participation [in a law enforcement investigation] remains a secret," including "investigating agents."  Senate of P.R., 823 F.2d at 588 (citations omitted).  And "while it is true that Government officials may have a somewhat diminished privacy interest, they do not surrender all rights to personal privacy when they accept a public appointment." Quinon v. FBI, 86 F.3d 1222, 1230 (D.C. Cir. 1996) (citation and internal quotation marks omitted).  Thus, although the Circuit has declined to "to imply a blanket exemption for the names of all [law enforcement] personnel in all documents," Lesar v. DOJ, 636 F.2d 472, 487 (D.C. Cir. 1980), it repeatedly has endorsed the application of Exemption 7(C) "to withhold names, addresses, telephone numbers, . . . and other such private information regarding law enforcement officials, . . . [and] other government employees," Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1115 (D.C. Cir. 2007).[11]

Where "'the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure.'"  Rimmer v. Holder, 700 F.3d 246, 257 (6th Cir. 2012) (quoting Nat'l Archives &

---

[10] See Hodge v. FBI, 703 F.3d 575, 580–81 (D.C. Cir. 2013) (citation omitted) (recognizing that "private citizens—such as witnesses, informants, and suspects—have particularly strong  privacy interests"); Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1115 (D.C. Cir. 2007) (internal quotation marks omitted) (affirming government's application of Exemption 7(C) to withhold private information of "third party individuals"); SafeCard, 926 F.2d at 1205 (alteration in original) (citation and internal quotation marks omitted) ("Exemption 7(C) affords broad[ ] privacy rights to . . . witnesses . . . ."); Senate of P.R., 823 F.2d at 588 (citation omitted) ("Other persons involved in the investigation-witnesses [and] informants . . .-also have a substantial interest in seeing that their participation remains secret.").

[11] See also Hodge, 703 F.3d at 580–81 (affirming the application of Exemption 7(C) "to protect private information of various investigators"); Schrecker v. DOJ, 349 F.3d 657, 661 (D.C. Cir. 2003) (citing cases) (stating that the Circuit has "consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants"); Davis, 968 F.2d at 1281 (recognizing that "undercover agents" have "cognizable privacy interests" under Exemption 7(C)); SafeCard, 926 F.2d at 1205 (alteration in original) (emphasis added) (citation and internal quotation marks omitted) ("Exemption 7(C) affords broad[ ] privacy rights to suspects, witnesses, and investigators."); Baez v. DOJ, 647 F.2d 1328, 1339 (D.C. Cir. 1980) (affirming the application of Exemption 7(C) "to the names of lower and middle-level FBI personnel").

Records Admin. v. Favish, 541 U.S. 157, 172 (2004)).  "'First, the citizen must show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake.'"  Id. (quoting Favish, 541 U.S. at 172).  "'Second, the citizen must show the information is likely to advance that interest.'"  Id. (quoting Favish, 541 U.S. at 172).  "It is well established that the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens' right to be informed about what their government is up to."  Davis, 968 F.2d at 1282 (internal quotation marks omitted) (citing DOJ v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 773 (1989)).  By contrast, Exemption 7(C) broadly "protects the privacy interests of all persons mentioned in law enforcement records, whether they be investigators, suspects, witnesses, or informants."  Sussman, 494 F.3d at 1115 (citation omitted).

    Because the privacy interests are generally weightier, the Circuit has held that "unless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  SafeCard, 926 F.2d at 1206.  Ordinarily, to satisfy this standard, "'the requester must produce evidence that would warrant a belief by a reasonable person that the alleged [g]overnment impropriety might have occurred.'"  See Sussman, 494 F.3d at 1115 (quoting Favish, 541 U.S. at 174).  The requester also must seek information that is "probative of an agency's behavior or performance."  See SafeCard, 926 F.2d at 1205 (citations omitted); see also Davis, 968 F.2d at 1282.  Accordingly, even where the requester alleges misconduct, "bare and undeveloped allegations [do] not warrant

a belief by a reasonable person that impropriety might have occurred." <u>Sussman</u>, 494 F.3d at 1115 (citing <u>Favish</u>, 541 U.S. at 174).[12]

In this case, Exemption 7(C) covers the information contained in the category one redactions. As expounded above, the Circuit has consistently held that Exemption 7(C) protects the private information of all persons involved in criminal investigations, including their names or identities, addresses, and telephone numbers. And, while the plaintiff alleges that he seeks the information to investigate potential prosecutorial impropriety, his bare and undeveloped allegations do not support a reasonable belief that the alleged misconduct might have occurred. Nor has the plaintiff adequately explained how the disclosure of the information in the category one redactions would be probative of the prosecutor's alleged misconduct. After all, the plaintiff already knows the names of the government agents whom he accuses of conspiring to entrap him. Pl.'s Second Cross-Mot. for Summ. J. at 13. Accordingly, the defendants properly relied on Exemption 7(C) to redact the information in the category one redactions.[13]

c.      Category 2 Redactions

The second category of redactions are the violator codes. The defendants argue that Exemption 7(E) justifies the redaction of these codes and the Court agrees.

Exemption 7(E) protects records or information compiled for law enforcement purposes from production where the release: (i) "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . or . . . guidelines for law enforcement investigations or prosecutions . . . ."; and (ii) "could reasonably be expected to risk

---

[12] <u>See also</u> <u>Citizens for Responsibility</u>, 746 F.3d at 1094 (stating that "in cases where 'the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure.'" (quoting <u>Favish</u>, 541 U.S. at 174)).

[13] The defendants invoke Exemption 7(C) also to justify the redaction of one document in its entirety. The Court discusses the propriety of this decision in further detail in Part III.A.2.e, <u>infra</u>.

circumvention of the law." 5 U.S.C. § 552(b)(7)(E) (2012). The Circuit has construed

Exemption 7(E) to set "a relatively low bar for the agency to justify withholding." Blackwell v.

FBI, 646 F.3d 37, 42 (D.C. Cir. 2011). "Rather than requiring a highly specific burden of

showing how the law will be circumvented, [E]xemption 7(E) only requires that the [agency]

demonstrate logically how the release of the requested information might create a risk of

circumvention of the law." Id. (second alteration in original) (citation and internal quotation

marks omitted). This is because Exemption 7(E), by its plain terms,

> looks not just for circumvention of the law, but for a risk of circumvention; not
> just for an actual or certain risk of circumvention, but for an expected risk; not
> just for an undeniably or universally expected risk, but for a reasonably expected
> risk; and not just for certitude of a reasonably expected risk, but for the chance of
> a reasonably expected risk.

Id. (citation omitted).

Judges in this District have consistently applied Exemption 7(E) to the violator codes at

issue.[14] Collectively, these cases support the proposition that affidavits that describe the

government's reasons for withholding violator codes in reasonably specific and logical detail

may support summary judgment, particularly where the "plaintiff does not seriously challenge

the DEA's assertion that further disclosure of the codes would disclose techniques[,] procedures .

. . [and] guidelines for law enforcement investigations or prosecutions that could reasonably be

---

[14] See, e.g., Dorsey v. Exec. Office for U.S. Attorneys, 83 F. Supp. 3d 347, 357 (D.D.C. 2015) (citations omitted)
("The Court concludes that the DEA properly has withheld [violator codes] under Exemption 7(E)."); McKneely v.
DOJ, ____ F. Supp. 3d ____, ____, No. CV 13-1097, 2015 WL 5675515, at *6 (D.D.C. Sept. 25, 2015) (citations
omitted) ("[The] DEA's redaction of [violator codes] from records responsive to FOIA requests has been routinely
upheld . . . ."); Smith v. Exec. Office for U.S. Attorneys, 83 F. Supp. 3d 289, 296 (D.D.C. 2015) (citations omitted)
("The Court concludes that the DEA properly withholds these G-DEP codes under Exemption 7(E)."); Fowlkes v.
ATF, 67 F. Supp. 3d 290, 307 (D.D.C. 2014) (citations omitted) (holding that the DEA's position that Exemption
7(E) protects violator codes "is entirely supported by relevant case law"); Ortiz v. DOJ, 67 F. Supp. 3d 109, 123
(D.D.C. 2014) (citations omitted) ("The Court concludes that [violator codes are] properly . . . withheld under FOIA
Exemption 7(E)."); Higgins v. DOJ, 919 F. Supp. 2d 131, 151 (D.D.C. 2013) (citations omitted) (holding that the
DEA's decision to withhold violator codes "[was] appropriate in light of the Milner decision").

expected to risk circumvention of the law." <u>Cf.</u> <u>Adionser v. DOJ</u>, 33 F. Supp. 3d 23, 26 (D.D.C. 2014) (alterations in original) (citations and internal quotation marks omitted); note 14, <u>supra</u>.

Consistent with the position of other members of this Court, the Court concludes that Exemption 7(E) applies to the violator codes in this case also. The Little declaration and supplemental Wassom declaration explain how the disclosure of the violator codes might create a risk of circumvention of the law in reasonably specific and logical detail. <u>See</u> <u>supra</u> pp. 8–10. Moreover, the plaintiff does not even attempt to challenge the defendants' explanation. Accordingly, the Court holds that Exemption 7(E) protects the violator codes from disclosure.

            d.       Category 3 Redactions

The category three redactions involve documents containing "information about a confidential source and his/her drug-related interaction with third parties." Supp. Wassom Decl. ¶¶ 53–54. The defendants invoked Exemption 7(D) to withhold three such documents in their entirety. The Court agrees that Exemption 7(D) justifies the withholding of the confidential information in these documents, including the identity of the source.

"FOIA Exemption 7(D) protects records or information compiled by criminal law enforcement authorities in the course of criminal investigations if their release could reasonably be expected to disclose the identity of, as well as information provided by, a confidential source." <u>Computer Prof'ls for Soc. Responsibility v. U.S. Secret Serv.</u>, 72 F.3d 897, 905 (D.C. Cir. 1996) (citing 5 U.S.C. § 552(b)(7)(D)). In other words, "[w]here, as here, the records at issue were compiled by criminal law enforcement authorit[ies] in the course of a criminal investigation, they are covered by Exemption 7(D) if producing the records could reasonably be expected to disclose the identity of a confidential source or information furnished by such a source. <u>Roth v. DOJ</u>, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (internal quotation marks omitted)

(citing 5 U.S.C. § 552(b)(7)(D)).  "The applicability of . . . [Exemption 7(D)] in each case depends upon whether the particular source who furnished the information at issue was granted confidentiality, either expressly or by implication." Mays v. Drug Enf't Admin., 234 F.3d 1324, 1328 (D.C. Cir. 2000) (citing Landano, 508 U.S. at 172).  Regarding implied confidentiality, although a source is not confidential under Exemption 7(D) merely because the source provides information to the government during a criminal investigation, "often the [g]overnment [will] be able to point to more narrowly defined circumstances that will support the inference." Id. at 1329 (internal quotation marks omitted) (citing Landano, 508 U.S. at 179).  That is, "[t]here may well be other generic circumstances in which an implied assurance of confidentiality fairly can be inferred." Id. (alteration in original) (internal quotation marks omitted) (citing Landano, 508 U.S. at 179).  "For example, when circumstances such as the nature of the crime investigated and [the informant's] relation to it support an inference of confidentiality, the [g]overnment is entitled to a presumption." Id. (internal quotation marks omitted) (citing Landano, 508 U.S. at 181).  One such situation is when "the cooperating individual supplied information about a conspiracy to distribute crack and powder cocaine." Id.  This result is the acknowledgement of "the violence and risk of retaliation that attend this type of crime." Id.  The government may also show that an informant supplied confidential information about a conspiracy to distribute cocaine "by providing a sufficiently detailed explanation of the basis for the agency's conclusion." Campbell, 164 F.3d at 34.

In this case, Exemption 7(D) applies to the information that the category three redactions embody.  It is a matter of record that the plaintiff is currently serving a life sentence for drug trafficking offenses.  Specifically, the defendants' Statement of Material Facts not in Genuine Dispute with Respect to Second Renewed Motion for Summary Judgment states, and the plaintiff

does not dispute, that the plaintiff "is currently serving a life sentence [after being convicted of] conspiracy to import and distribute cocaine." Defs.' State. of Mat. Facts ¶ 1. Additionally, the supplemental Wassom declaration states, and the plaintiff does not dispute, that he "was convicted [specifically] of conspiracy and possession with intent to distribute cocaine." Supp. Wassom Decl. ¶ 52. Wassom further states that "individuals who provided information about the plaintiff would fear for their safety, since violence is inherent in the trade in . . . cocaine, if their identities or the information they provided was revealed." Id. These representations more than adequately establish that the source of the redacted information is protected by Exemption 7(D), as it is reasonable to infer that the information provided was in connection with the DEA's drug importation and distribution investigation of the plaintiff.[15]

e.      Segregability

The FOIA provides that, if a record contains information that is exempt from disclosure, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b) (2012). In other words, "[i]t has long been a rule in the D.C. Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). And it is the government's burden to show with "reasonable specificity why the documents cannot be further segregated." Armstrong v. Exec. Office of the President, 97 F.3d 575, 578 (D.C. Cir. 1996) (citations and internal quotation marks omitted). Therefore, "conclusory statements" that a document cannot be further segregated are insufficient to support summary judgment. See Mead, 566 F.2d at 261.

---

[15] The DEA also cited Exemptions 7(C) and (F) to justify the withholding of the names of the law enforcement officers identified in the documents in the category three redactions. The Court agrees that Exemption 7(C) would protect this information from disclosure for the reasons stated in Part III.A.2.a–b, supra. Having concluded that Exemptions 7(C) and (D) protect this information, the Court need not consider the applicability of Exemption 7(F).

The segregability, or lack thereof, of information withheld under Exemption 7(D) raises special considerations.  The Circuit has stated that "Exemption 7(D) differs from other FOIA exemptions in that its applicability depends not on the specific factual contents of a particular document; instead, the pertinent question is whether the information at issue was furnished by a confidential source during the course of a legitimate criminal law investigation." Lesar, 636 F.2d at 492.  According to Lesar, "[o]nce that question is answered in the affirmative, all such information obtained from the confidential source receives protection." Id.  Thus, the government may not be able to "say anything further in the Vaughn index about the requested document without also revealing information protected from disclosure by Exemption 7(D)." Simon v. DOJ, 980 F.2d 782, 784 (D.C. Cir. 1992).  Consequently, in some cases, affidavits that "make[] clear for which documents [Exemption 7(D)] was invoked" may suffice to show that the documents contain no reasonably segregable information.  Cf. Simon, 980 F.2d at 784 (emphasis added) ("[W]here the agency cannot describe the document fully enough to show that it is exempt from disclosure without in the course of doing so disclosing the very information that warrants exemption, the solution is for the court to review the document in camera."); Lesar, 636 F.2d at 492.  Affidavits are more likely to suffice to show that the documents contain no reasonably segregable information where, as here, "the record indicates that [the government] did segregate non-exempt information in documents withheld under other FOIA exemptions." Boyd v. DOJ, 475 F.3d 381, 391 (D.C. Cir. 2007).

In this case, with one minor exception, the defendants have adequately shown that they disclosed all non-exempt portions of the documents at issue.  The Court has carefully reviewed the redacted documents and agrees with the defendants' assessment that they contain "limited and careful excision of material and corresponding markings with the [allegedly] applicable

FOIA Exemptions."  Defs.' Second Summ. J. Mot. at 12.  Take for example a document included

in the September 2005 documents titled "Application for Transfer of Federally Forfeited

Property" (hereinafter, "the application").  Sept. 2005 Ltr., Ex. 1 at 16–17.  The application

contains numerous items of information, such as general instructions, the asset number, its

seizure date, the judicial district of the seizure, the case type, the requesting agency name and

address, a description of the asset, the specific intended law enforcement use, answers to various

questions related to the seizure, and the titles of the officials who executed the document.  Id.

The application's only redactions are for the name and telephone number of the contact person,

the names of the officials who executed the document, and approximately two out of eight lines

of text in a section for adding details to previous answers.  See id.  The other documents

disclosed in September 2005 contain similarly minimal redactions.  See generally Sep. 2005 Ltr.,

Ex. 1.  Accordingly, the defendants have shown that they disclosed all of the reasonably

segregable information from the redacted documents.

 Moreover, the DEA has shown that it has released all the reasonably segregable material

from at least four of the five documents withheld in full.  These documents are identified in

exhibit 1 to the September 19, 2005 letter as numbers "35," "37," "42," "106," and "107."  See

id., Ex. 1 at 36, 38, 43, 105, 106.[16]  The Court addresses documents 42, 106, and 107 collectively

because the DEA invoked Exemption 7(D) to justify withholding them in full.  The Court will

independently consider documents 37 and 35.  Discussing these two documents independently

promotes clarity because the DEA invoked only Exemption 7(C) to withhold document 37.

Moreover, the basis on which the DEA withheld document 35 is not entirely clear.

---

[16] The numbers in this citation correspond to the page numbers that the Court's electronic filing system generates and that appear on the top, right-hand side of the documents.  The Court did not use the original page numbers on the documents because their numbering is inconsistent.

The DEA has adequately shown that it released all reasonably segregable information from documents 42, 106, and 107.  The Wassom declaration states that the DEA withheld these documents pursuant to Exemption 7(D).  Supp. Wassom Decl. ¶ 53.  Wassom further states that these documents are "page five of three . . . five-page Seizure Forms," and that the "pages contain information about a confidential source and his/her drug-related interaction with third parties."  Id. ¶ 54.  The declaration adds that the "pages were withheld in their entirety pursuant to [Exemptions 7(C) and (D)] since the release of the information would disclose the identity of and information provided by a confidential source."  Id.  While Wassom's statements are not overly specific, they indicate that the DEA cannot say anything more about these documents without revealing protected information.

The DEA's Vaughn index supports this conclusion.  Supp. Wassom Decl., Ex. H. Regarding documents 106 and 107, the Vaughn index states that the information withheld in full pertains to a "probable cause section."  Id., Ex. H at 102.[17]  As probable cause is a fact-intensive inquiry, cf. Illinois v. Gates, 462 U.S. 213, 232 (1983), this statement, together with Wassom's declarations, indicates that the DEA could not further discuss documents 106 and 107 without revealing protected information.  As for document 42, the DEA's Vaughn index states that "paragraphs 1–3" were deleted because they contained the "identity of a confidential source," "information about a confidential source," and a third-party's "name & investigative details." Supp. Wassom Decl., Ex. H at 53.  Coupled with Wassom's other declarations, the statement that all of this information is contained in three paragraphs indicates that it is fact-intensive and, as a consequence, inextricably intertwined with any exempt portions of the document.

---

[17] The page numbers in citations for exhibit H correspond to the page numbers that the Court's electronic filing system generates and that appear on the top, right-hand side of the documents.  The Court did not use the original page numbers that appear on the documents because their numbering is inconsistent.

The DEA has also sufficiently shown that it released all reasonably segregable information from document 37.  The DEA invoked Exemption 7(C) to completely withhold this document because it contained "names of individuals" and their "personal information."  Id., Ex. H at 50.  Although the DEA redacted similar information from other documents without withholding them in full, the Court nonetheless concludes that the DEA released all reasonably segregable information from this single document.  As support for this conclusion, it is noteworthy that the DEA made minimal redactions to virtually every other document.  Therefore, the fact that the DEA totally withheld only this one document is telling.  The plaintiff might respond that the DEA had something to hide, but if such a supposition is being advanced based on the plaintiff's vague allegations of a government conspiracy to entrap him, it would fail as purely speculative.  Moreover, the DEA declares, and the record reflects, that document 37 "is page two of a five[-]page [asset] seizure form."  Supp. Wassom Decl. ¶ 63.  It is unclear how one would reasonably expect this document to contain relevant information, especially since the plaintiff received the lion's share of the information from the other portions of the same form.  Accordingly, the DEA has adequately shown that document 37 is not further segregable.

However, the DEA has yet to show why document 35 contains no reasonably segregable information.  The record indicates that the DEA withheld five documents in full, see Sept. 2005 Ltr., Ex. 1 at 36, 38, 43, 105, 106, and the supplemental Wassom declaration states as much, Supp. Wassom Decl. ¶ 7 (stating that "five (5) pages were withheld in their entirety").  Yet, in an apparent contradiction, Wassom states in the following paragraph that "four (4) pages were withheld in their entirety."  Id. ¶ 8 (emphasis added).  Then, Wassom inconsistently refers to the "four (5) pages."  Id. ¶ 53 (emphasis added).  Hence, it is unclear whether there is a fifth fully redacted document and, if so, on what basis the DEA withheld it.  On this uncertain record, the

Court must reserve judgment on whether document 35 contains any reasonably segregable information and require the defendants to submit supplemental briefing on this issue.

The plaintiff's counterarguments to the withholdings being upheld by the Court are devoid of merit.  The brevity of the Court's analysis that follows reflects its prior admonition that "[a]ny irrelevant arguments or further motions for reconsideration are strongly discouraged and, absent an exceptional showing, will be summarily denied."  June 2013 Order at 11.

The plaintiff's first core contention is that the defendants failed to produce certain documents (e.g., treasury checks, and various documents from the DEA, ATF, and DOJ).  This contention is unsound.  The plaintiff has already raised the same arguments,  Pl.'s Mot. & Intent Reply Opp'n to Defs.' First Mot. Summ J. ¶¶ 3, 5–6, 9; Pl.'s Mot. to Recon. Sep. 2012 Order & Mem. at 7–8, 13, and the Court rejected them in its September 11, 2012 opinion and June 20, 2013 order,  see generally Sept. 2012 Op.; June 2013 Order  Moreover, the plaintiff's first core contention is well outside of the sole issue remaining for resolution in this case, namely, the propriety of the defendants' redactions of the September 2005 documents.  Therefore, the plaintiff's first core contention fails.

The plaintiff's second core contention is also meritless.  The plaintiff contends that the Court erred by considering the adequacy of only the Marshals Service's search in its September 11, 2012 opinion.  However, the court rejected the same argument in the June 20, 2013 order. June 2013 Order at 5.  Moreover, the Court stated in a footnote in the order that it would conclude that the DEA's search was reasonable if it reached the question.  Id. n.5 ("Even if the Court were to independently evaluate the adequacy of the DEA's search, it would conclude that the supplemental declaration from the DEA explaining its search efforts suffices to carry the

agency's burden at the summary judgment stage . . . ."). Thus, the plaintiff's second core contention is unconvincing.

With the exception of one minor unresolved issue, the plaintiff's third core contention is likewise unsound. The plaintiff suggests in his Second Cross-Motion for Summary Judgment that the Marshals Service has produced only sixty-five of the eighty-four documents that it purports to have produced in September 2005. But the record indicates that counsel for the defendants sent the plaintiff all of these documents, in part because all the documents are in the record. See Sept. 2005 Ltr., Ex. 1; see also Supp. Bordley Decl. ¶ 10. Given the defendants' representation that they have produced all of these documents, the presence of all the documents in the record, the voluminous amount of documents that the defendants have already produced, the plaintiff's acknowledgment that he received at least the majority of the documents, and the plaintiff's history of overzealously litigating this case, the plaintiff has failed to create a genuine dispute about whether the defendants withheld nineteen of the eighty-four documents.[18] In similar fashion, the plaintiff asserts that he "still have [sic] yet to received [sic] thir-nine [sic] . . . pages" that the Marshals Service allegedly sent him on August 28, 2012." Pl.'s Second Cross-Mot. for Summ. J. ¶ 5. However, the second supplemental Bordley declaration states that these documents were produced, Second Supp. Bordley Decl. ¶ 3, and Bordley attached a letter to this declaration stating that the Marshals Service made the supplemental disclosure of these documents, id., Ex. A. Yet, unlike the eighty-four documents discussed above, the Marshals Service did not attach the actual documents to the record. Therefore, exercising caution, the

---

[18] Out of an abundance of caution, the Court will provide the plaintiff with exhibit 1 to the defendants' Cross-Motion for Summary Judgment, which includes the nineteen documents that the plaintiff references, as they are now part of the Court record.

Court will order the Marshals Service to resend to the plaintiff the thirty-nine documents referenced in paragraph 3 of the second Bordley declaration.

The plaintiff's last core contention also lacks merit.  The plaintiff contends, without elaboration, that the DEA has yet to justify the redactions that it made to thirteen pages of documents released in January 2000.  The Court summarily denies this argument, as the Court has already rejected it and it lies far afield from the sole remaining issue in the case.

In summary, the defendants properly invoked Exemptions (7)(C), (D), and (E) to justify their redactions of the information contained in categories one, two, and three.  However, the DEA has yet to sufficiently show that it has released all the reasonably segregable material from document 35.  Therefore, the Court will reserve judgment on whether the DEA has released all reasonably segregable information from document 35 and require the defendants to submit supplemental briefing on this issue.  Furthermore, while the plaintiff's core contentions are meritless, the Court will nonetheless order the Marshals Service to resend to the plaintiff the thirty-nine documents referenced in paragraph 3 of the second Bordley declaration.  Accordingly, for the foregoing reasons, the Court grants in part the defendants' Second Summary Judgment Motion and denies the plaintiff's Second Cross-Motion for Summary Judgment.

**B.**     **The Remaining Motions**

Three additional motions require the Court's attention.  The first is the defendants' Motion for Extension of Time to File Reply Brief.  Defs.' Mot. Ext. Time to Reply.  The second is the plaintiff's Motion to Concede, in which he seeks an order granting his Second Cross-Motion for Summary Judgment based on the defendants' alleged failure to timely respond to his Second Cross-Motion for Summary Judgment.  Pl.'s Mot. to Concede.  The third is the plaintiff's

Motion to Enlarge Time, whereby he seeks an extension to the deadline set by the Court's May 14, 2015 minute order requiring status reports.  Pl.'s Mot. to Enlarge Time.  The Court addresses the defendants' Motion for Extension of Time to File Reply Brief and the plaintiff's Motion to Concede collectively because they present overlapping issues.  The Court then considers the plaintiff's Motion to Enlarge Time.

> 1.    Motion for extension of time and motion to concede

As explained in more detail above, see supra p. 7, the Court issued a briefing schedule regarding the sole remaining issue contemporaneously with its June 20, 2013 order.  The defendants had to submit their Second Summary Judgment Motion on or before July 22, 2013, the plaintiff had to file his Second Cross-Motion for Summary Judgment on or before August 22, 2013, and the defendants' reply brief was due no later than September 5, 2013.  June 2013 Order at 10–11.  But the defendants did not receive the plaintiff's Second Cross-Motion for Summary Judgment until around September 13, 2013.  Subsequently, on September 19, 2013, the defendants filed the Motion for Extension of Time to File Reply Brief, asking the Court to extend the deadline for filing a reply brief to October 7, 2013.  On September 27, 2013, the plaintiff filed the Motion to Concede based on the defendants' failure to timely file the reply brief.

Things grew more complicated when, on October 2, 2013, the defendants filed their Motion to Stay.  In the Motion to Stay, the defendants asked the Court to extend all deadlines for a period commensurate with the duration of the lapse in appropriations, which lasted for sixteen days.  See Leonard v. U.S. Dep't of Def., 598 F. App'x 9 (D.C. Cir. 2015) (per curiam) (stating that the shutdown "began on October 1, 2013" and ended on "October 17, 2013"), cert. denied,

____ U.S. ____, 136 S. Ct. 261 (2015).  Ultimately, the defendants filed the reply brief on

October 25, 2013.

 Local Civil Rule 7 governs the service and filing of motions.  Under Local Rule 7(b),

"[w]ithin . . . such other time as the Court may direct, . . . an opposing party shall serve and file a

memorandum of points and authorities in opposition to [a] motion."  LCvR 7(b).  "If such a

memorandum is not filed within [14 days], the Court <u>may</u> treat the motion as conceded."  <u>See</u> <u>id.</u>

(emphasis added).  "The discretion to enforce Rule 7(b) 'lies wholly with the district court.'"

<u>Harrison v. Snow</u>, No. 04-5248, 2004 WL 2915335, at *1 (D.C. Cir. Dec. 16, 2004) (quoting

<u>Fed. Deposit Ins. Corp. v. Bender</u>, 127 F.3d 58, 68 (D.C. Cir. 1997)); <u>see also</u> <u>Malik v. District</u>

<u>of Columbia</u>, 574 F.3d 781, 786 (D.C. Cir. 2009) (citations omitted) (stating that the Circuit

"review[s] the district court's application of Rule 7(b) for abuse of discretion").

 "If an opposing party requests an enlargement of time before the [14-day] period

expires," <u>Wilson v. Prudential Fin.</u>, 218 F.R.D. 1, 3 (D.D.C. 2003) (citations omitted), the district

court may enlarge the time period "for good cause," Fed. R. Civ. P. 6(b)(1).  Rule 6(b)(1)'s

"good cause" standard is subject to the district court's discretion and does not require a showing

of "excusable neglect" if the opposing party requests the enlargement of time "before the original

time or its extension expires."  <u>Compare</u> <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 895–96

(1990) (stating that Rule 6(b)'s "for cause shown" standard is discretionary), <u>and</u> <u>Andrews v.</u>

<u>Daughtry</u>, 994 F. Supp. 2d 728, 735 (M.D.N.C. 2014) (citation and internal quotation marks

omitted) (noting that the change in Rule 6(b)'s language from "for cause shown" to "for good

cause" was "intended to be stylistic only"), <u>with</u> Fed. R. Civ. P. 6(b)(1)(A)–(B).  In other words,

the Court "has discretion to grant timely requests for extensions [under Rule 6(b)(1)]."

<u>Woodruff v. McPhie</u>, 593 F. Supp. 2d 272, 276 (D.D.C. 2009) <u>aff'd</u>, 383 F. App'x 5 (D.C. Cir.

2010); <u>see also</u> <u>Smith v. District of Columbia</u>, 430 F.3d 450, 456 (D.C. Cir. 2005) (citation

omitted) (stating that the Circuit reviews "the district court's decisions under Rule 6(b) for abuse

of discretion" and has been "quite deferential" in so doing).

      Here, the defendants have shown good cause to extend the deadline to reply to the

plaintiff's Second Cross-Motion for Summary Judgment.  Having represented that they received

this motion late, the defendants legitimately needed additional time to respond to it.  Then,

before the Court had a chance to rule on the Motion for Extension of Time to File Reply Brief,

the Court stayed the case for a period commensurate with the lapse in appropriations.  The

defendants originally requested until October 7, 2013 to file their reply, and the lapse in

appropriations lasted for sixteen days.  Therefore, one might argue that October 23, 2013 would

be the appropriate extended deadline.  However, such reasoning is overly mechanistic, in part

because the defendants specifically asked the Court in the Motion to Stay to refrain from "setting

any automatic deadlines" so that they could "make sure that necessary coordination and review

[could] be accomplished in the wake of the current shutdown."  Defs.' Mot. Ext. Time Reply ¶ 4;

<u>see also</u> <u>Fernandez v. Centerplate/NBSE, Inc.</u>, No. CIV.A. 04-0809RBW, 2005 WL 3273370, at

*6 n.2 (D.D.C. Aug. 1, 2005) (citations omitted) (declining to treat an opposition as conceded

where it was filed "only three days" after Local Rule 7(b)'s deadline for responding), <u>aff'd on</u>

<u>other grounds</u>, 441 F.3d 1006 (D.C. Cir. 2006).  Accordingly, the court grants, <u>nunc</u> <u>pro</u> <u>tunc</u>, the

defendants' Motion for Extension of Time to File Reply Brief, and denies the plaintiff's request

that his Second-Cross Motion for Summary Judgment be ordered conceded based on the

purported late filing of the defendants' reply to that motion.

    2.    <u>The plaintiff's motion to enlarge time</u>

The Court summarily grants, <u>nunc pro tunc</u>, the plaintiff's Motion to Enlarge Time.  The plaintiff ultimately filed his response to the May 14, 2015 minute order requiring status reports while his Motion to Enlarge Time was pending.  Furthermore, the defendants have not opposed this motion, and no prejudice would result from granting it.

## IV.    CONCLUSION

For the foregoing reasons, the Court: (1) grants in part the defendants' Second Summary Judgment Motion; (2) denies the plaintiff's Second Cross-Motion for Summary Judgment; (3) grants, <u>nunc pro tunc</u>, the defendants' Motion for Extension of Time to File Reply Brief; (4) denies the plaintiff's Motion to Concede; and (5) grants, <u>nunc pro tunc</u>, the plaintiff's Motion to Enlarge Time.

**SO ORDERED** this 14th day of March, 2016.[19]

REGGIE B. WALTON
United States District Judge

---

[19] An Order consistent with this Memorandum Opinion shall be issued contemporaneously.