**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELWOOD J. COOPER, Plaintiff, | ) | |
| v. | ) | Civil Action No. 99-2513 (RBW) |
| UNITED STATES DEPARTMENT OF JUSTICE, et al., Defendants. | ) | |

## MEMORANDUM OPINION

The plaintiff, Elwood J. Cooper, a federal prisoner proceeding pro se, brings this action against the United States Department of Justice (the "Justice Department"), the United States Marshals Service (the "Marshals Service" or the "USMS"), and the United States Department of the Treasury (the "Treasury Department") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the release of "all records related to his arrest and prosecution." Cooper v. Dep't of Just., 890 F. Supp. 2d 55, 57–58 (D.D.C. 2012) (Walton, J.). On March 14, 2016, following multiple decisions by the undersigned and other members of this Court and multiple remands by the District of Columbia Circuit over the twenty-plus-year duration of this case, the Court granted summary judgment to the defendants on what it understood to be "[t]he only remaining issue for the Court to resolve in this case[—]the propriety of the redactions made to the additional documents produced to the plaintiff in September 2005." Cooper v. U.S. Dep't of Just., 169 F. Supp. 3d 20, 32 (D.D.C. 2016) (Walton, J.) ("Cooper 2016"). However, after the plaintiff appealed the Court's ruling, see Notice of Appeal at 1, ECF No. 146, the District of Columbia Circuit remanded this case back to the Court in 2018, holding the plaintiff's appeal in

abeyance, in order for this Court to consider "unresolved issues in this case[,]" namely, (1) "the withholdings in records produced to [the plaintiff] prior to [his] second appeal" and (2) "whether the agencies other than the [Marshals Service] conducted adequate searches for responsive records[,]" Order at 1–2, Cooper v. U.S. Dep't of Just., No. 17-5219 (D.C. Cir. July 11, 2018) ("Cooper III"). In a Memorandum Opinion and Order issued on March 1, 2022, the Court resolved most of the unresolved issues in this case. See generally Cooper v. U.S. Dep't of Just., No. 99-cv-2513 (RBW), 2022 WL 602532, *1 (D.D.C. Mar. 1, 2022) (Walton, J.) (Cooper 2022); Order (Mar. 1, 2022) ("March 2022 Order"), ECF No. 188. However, there were several issues that the Court could not fully resolve, which were:

> (1) the adequacy of the searches conducted by [the United States Customs Service ("]Customs[")] and the [Bureau of Alcohol, Tobacco, Firearms, and Explosives ("]ATF[")]; (2) the discrepancy between the [Lee H.] Kramer Declaration and Customs' Vaughn Index in the number of pages located, processed, withheld, released in part, and released in full by Customs; (3) the bases for the withholdings on the pages addressed in rows 5, 9–10, 13–15, 23–28, 31–33, 35, 46, 67, and 68 of the chart in the Defendants' Reply to Plaintiff's Consolidated Brief, ECF No. 159; (4) whether the [Drug Enforcement Administration ("]DEA[")] received the February 7, 2000 seven-page referral from the ATF; and (5) the DEA's, the ATF's, and the [United States] Marshals Service's bases for their conclusions regarding segregability.

See Mar. 2022 Order at 2. Accordingly, after the defendants apprised the Court of their expected timeline as to when they could provide the Court with this additional information, see generally Defendants' Status Report, ECF No. 193, Defendants' Status Report, ECF No. 196, the Court ordered the defendants to file their renewed motion for summary judgment, including supplemental Vaughn information or declarations regarding the outstanding information the Court is required to resolve in this case. See generally Order (July 11, 2022), ECF No. 197.

Pending now before the Court are the Defendants' Renewed Motion For Summary Judgment On Remaining Issues ("Defs.' Mot."), ECF No. 211, the Cross Motion for Summary

Judgment by Elwood J. Cooper ("Pl.'s Mot."), ECF No. 213, and the plaintiff's Motion To Enforce The D.C. Circuit's Remand Mandates And Readiness To Proceed With Targeted Resolutions ("Pl.'s Mot. to Enforce"), ECF No. 217. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must grant in part and hold in abeyance in part the defendants' renewed motion for summary judgment on the remaining issues, deny the plaintiff's cross motion for summary judgment, and deny as moot the plaintiff's motion to enforce.

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendants' Second Renewed Motion For Summary Judgment, Exhibit ("Ex.") 1 ("Sept. 19, 2005 FOIA Release"), ECF No. 120-2; (2) the Defendants' Second Renewed Motion For Summary Judgment, Ex. 2 ("Supp. Decl. of William E. Bordley"), ECF No. 120-3; (3) the Defendants' Notice Of Filing, Declaration Of William C. Little, Jr. ("Little Decl."), ECF No. 153-1; (4) the Plaintiff's Combined Reply and Ex Parte Status Report and Statement Of Material Facts In Genuine Dispute In Opposition To Defendants' Notice of Filing And Consolidated Brief ("Pl.'s 2018 Opp'n"), ECF No. 156; (5) the Defendants' Reply to Plaintiff's Consolidated Brief ("Defs.' Reply"), ECF No. 159; (6) the Declaration of Leila I. Wassom (the "First Wassom Declaration" or "Wassom Decl."), ECF No. 175-4; (7) the Declaration of Lee H. Kramer (the "Kramer Declaration" or "Kramer Decl."), ECF No. 175-5; (8) the Supplemental Declaration of Leila I. Wassom (the "Wassom Supplemental Declaration" or "Supp. Wassom Decl."), ECF No. 175-8; (9) the Supplemental Declaration [of William E. Bordley] (the "Bordley Supplemental Declaration" or "Supp. Bordley Decl."), ECF No. 175-9; (10) the Second Supplemental Declaration [of William E. Bordley] (the "Second Supplemental Bordley Declaration" or "2d Supp. Bordley Decl."), ECF No. 175-11; (11) the Declaration of William C. Little, Jr. (the "Little Declaration" or "Little Decl."). ECF No. 175-13; (12) the Defendants' Memora[]ndum Of Points And Authorities In Support Of Renewed Motion For Summary Judgment ("Defs.' Reply"), ECF No. 211; (13) the Declaration Of Angela D. Hertel ("Hertel Decl."), ECF No. 211-1; (14) Hertel Decl., Ex. A ("DEA's Cooper Vaughn #3, Chart 1"), ECF No. 211-1; (15) Hertel Decl., Ex. B ("DEA's Cooper Vaughn #3, Chart 2"), ECF No. 211-1; (16) the Declaration Of Peter J. Chisholm, Team Lead, Information And Privacy Governance Division, Bureau Of Alcohol, Tobacco, Firearms And Explosives ("Chisholm Decl."), ECF No. 211-2; (17) the Declaration Of Charlotte Luckstone ("Luckstone Decl."), ECF No. 211-3; (18) the U.S. Marshals Service Vaughn Index ("Marshals Service Vaughn Index"), ECF No. 211-3; (19) the Affidavit Of Shari Suzuki ("Suzuki Aff."), ECF No. 211-4; (20) the Declaration Of Fernando Pinero ("Pinero Decl."), ECF No. 211-5; (21) the U.S. Immigration and Customs Enforcement Vaughn Index ("ICE FOIA Vaughn Index"), ECF No. 211-5; (22) the Plaintiff's Objection To The Court's March 1, 2022 Memorandum And Order Granting And Granting Summary Judgment In Part And Cross-Motion For Summary Judgment In Opposition To Defendants' Fourth Motion For Summary Judgment On The Issues Identified In The D.C. [] Circuit's July 11, 2018 Remand Order And To Appear At The Scheduled Status Hearing Via Zoom Video ("Pl.'s Mem."), ECF No. 212; (23) the Pl.'s Mem., Tab F (Criminal Docket in United States v. Ellis, No. 98-cr-141 (S.D. Fl.)) ("Criminal Docket in U.S. v. Ellis, 98-cr-141"), ECF No. 212; (24) the Pl.'s Mem., Tab G (Criminal Docket in United States v. Walker, No. 98-cr-8095 (S.D. Fl.)) ("Criminal Docket in U.S. v. Walker, 98-cr-8095), ECF No. 212; (25) the Pl.'s Mem., Tab H ("Letters from the Bahamian Gov"), ECF No. 212; (26) the Pla[in]tiff's Statement Of Material Fact Ac[tu]ally And In Good Faith Controverted In Support Cross-Motion For Summary Judgment ("Pl.'s Facts"), ECF No. 212-1; and (27) Pl.'s Facts, Ex. 7 ("DEA Letters from Feb. 4th and Feb. 25th 2000"), ECF No. 212-1.

## I. BACKGROUND

The Court has previously detailed the background of this case in its September 11, 2012, March 14, 2016, and March 1, 2022 Memorandum Opinions. See Cooper v. U.S. Dep't of Just., 890 F. Supp. 2d 55, 58–60 (D.D.C. 2012); Cooper v. U.S. Dep't of Just., 169 F. Supp. 3d at 20, 26–31 (D.D.C. 2016); Cooper v. U.S. Dep't of Just., No. 99-2513 (RBW), 2022 WL 602532, *1 (D.D.C. Mar. 1, 2022). Therefore, the Court need not repeat the saga of this long-running FOIA case again here. The Court will only detail additional background information necessary to address the outstanding issues yet to be resolved as described in the Court's March 2022 Memorandum Opinion.

On May 3, 1999, the plaintiff submitted FOIA requests to the DEA, Customs, ATF, and the Marshals Service related to the criminal investigation of him and his subsequent conviction for conspiring to import cocaine into the United States. See Cooper 2022 at 3–5; see also id. at 19–26. After years of litigation, and two former members of this court presiding over this case, the District of Columbia Circuit remanded this case to this court for the third time. See id. at 21–28 (citing Cooper v. U.S. Dep't of Just., No. 17-5219 (July 11, 2018) (per curiam) ("Cooper III"). In the Circuit's remand order, it directed this Court to "address[] the withholdings in records produced to Cooper prior to the second appeal . . . [and] whether the agencies other than [the Marshals Service] conducted adequate searches for responsive records." Cooper III at 1–2. The Circuit held the plaintiff's appeal "in abeyance pending further order of th[is] court." Id. at 2.

After the parties briefed the outstanding issues that needed to be resolved, the Court granted summary judgment in favor of the defendants as to:

> (1) the plaintiff's [FOIA] request to the Executive Office for United States' Attorneys; (2) the adequacy of the . . . DEA['s] search for responsive records; (3)

> the . . . ATF['s] and the Department of State's ("State Department") assertion of Exemption 3; (4) the Marshals Service['s], the DEA's, the Customs['s], and the ATF's assertion of Exemption 7(C); (5) the DEA's and Customs' assertion of Exemption 7(D); (6) Customs' and the ATF's assertion of Exemption 7(E); (7) Customs' assertion of Exemption 7(E) regarding information that was previously withheld pursuant to Exemption 2; (8) the DEA's assertion of Exemption 7(F); and (9) the segregability of the information withheld by Customs and the State Department.

March 2022 Order at 1–2. However, the Court was unable to address several other outstanding issues because of inadequate or a lack of information from the defendants. See generally Cooper 2022. Therefore, the Court ordered the defendants to submit:

> supplemental Vaughn information or declarations regarding: (1) the adequacy of the searches conducted by Customs and the ATF; (2) the discrepancy between the Kramer Declaration and Customs' Vaughn Index in the number of pages located, processed, withheld, released in part, and released in full by Customs; (3) the bases for the withholdings on the pages addressed in rows 5, 9–10, 13–15, 23–28, 31–33, 35, 46, 67, and 68 of the chart in the Defendants' Reply to Plaintiff's Consolidated Brief, ECF No. 159; (4) whether the DEA received the February 7, 2000 seven-page referral from the ATF; and (5) the DEA's, the ATF's, and the Marshals Service's bases for their conclusions regarding segregability.

March 2022 Order at 2; see Minute ("Min.") Order (Sept. 28, 2023).

In response to the Court's Order, on September 29, 2023, the defendants filed their renewed motion for summary judgment, see Defs.' Mot., and on December 15, 2023, the plaintiff filed his cross-motion for summary judgment, see Pl.'s Mot. On January 10, 2024, the defendants filed their combined reply to the opposition to their motion and their opposition to the plaintiff's cross-motion. See Defs.' Reply. And, on February 9, 2026, the plaintiff filed his motion to enforce the District of Columbia Circuit's mandate. See Pl.'s Mot. to Enforce.

The Court will address each outstanding issue listed above in turn.

## II. STANDARD OF REVIEW

"FOIA cases typically are resolved on a motion for summary judgment." Ortiz v. U.S. Dep't of Just., 67 F. Supp. 3d 109, 116 (D.D.C. 2014) (citation omitted). The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. U.S. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(3)(A), (b)); see also Wash. Post Co. v. U.S. Dep't of Just., 863 F.2d 96, 101 (D.C. Cir. 1988) (citation omitted) ("[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly."). In a FOIA action, the defendant agency has "[the] burden of demonstrating that the withheld documents are exempt from disclosure[,]" Boyd v. U.S. Dep't of Just., 475 F.3d 381, 385 (D.C. Cir. 2007) (citation omitted), and the district court must "determine the matter de novo," 5 U.S.C. § 552(a)(4)(B); see also U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989) ("[T]he FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'").

Moreover, the defendant's burden "cannot be met by mere conclusory statements." Wash. Post Co., 863 F.2d at 101 (citation omitted). Instead, "[t]he agency may meet [its] burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed[,]" King v. U.S. Dep't of Just., 830 F.2d 210, 217 (D.C. Cir. 1987) (citations omitted), and by "show[ing] how release of the particular material would have the adverse consequence that the Act seeks to guard against," Wash. Post Co., 863 F.2d at 101 (citation omitted). "When an agency demonstrates that records contain exempt information . . . it is 'entitled to a presumption that it complied with the obligation to disclose reasonably segregable material.'" Flyers Rights Education Fund, Inc. v. Fed. Aviation Administration, 71 F.4th 1051,

1058–59 (D.C. Cir. 2023) (internal brackets omitted) (quoting Sussman v. United States Marshals Service, 494 F.3d 1106, 1117 (D.C. Cir. 2007)). "To rebut this presumption, the requester must offer, at least, evidence that would warrant a belief by a reasonable person that the agency failed to comply with its obligation." Id. (internal quotations omitted).

Courts will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure].'" Students Against Genocide, 257 F.3d at 833 (omission in original) (quoting Goland v. Cent. Intel. Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)). However, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin., 185 F.3d 898, 904–05 (D.C. Cir. 1999) (quoting Nat'l Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

## III. ANALYSIS

### A. The Adequacy of Searches Conducted by ATF and Customs

"An agency responding to a FOIA request is simply required to conduct a search reasonably calculated to uncover all relevant documents." Porup v. Central Intelligence Agency,

997 F.3d 1224, 1237 (D.C. Cir. 2021) (internal brackets omitted) (citing In re: Clinton, 973 F.3d 106, 116 (D.C. Cir. 2020)). "[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) (citing Steinberg v. U.S. Dep't of Just., 23 F.3d 548, 551 (D.C. Cir. 1994)). An agency "need not demonstrate . . . that it located every document that the FOIA requester expected the agency to find." Pejouhesh v. U.S. Postal Serv., 17-cv-1684 (RDM), 2019 WL 1359292, at *4 (D.D.C. Mar. 26, 2019). Rather, "the proper inquiry is . . . whether the agency conducted a search reasonably calculated to uncover relevant documents." Bigwood v. U.S. Dep't of Def., 132 F. Supp. 3d 124, 135 (D.D.C. 2015).

To demonstrate that it has conducted an adequate search, "an agency may . . . provid[e to the Court] 'a reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials were searched.'" Id. (second set of ellipses omitted) (quoting Iturralde v. Comptroller of Currency, 315 F.3d 311, 313–14 (D.C. Cir. 2003)). "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" Id. (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

**1. The Adequacy of ATF's Search for Responsive Records**

In the Court's March 1, 2022, Memorandum Opinion, it concluded that, based on the declaration submitted by the defendants, it could not find "that the ATF's search for information responsive to the plaintiff's original requests was adequate." Cooper 2022 at 25. Specifically, the Court found that ATF did "not provide any information about which 'identifiers supplied by the plaintiff' were used to search[,]" id. (internal brackets omitted), the Treasury Enforcement

Communications System ("TECS"), and "[w]ithout a complete list of the search terms used in response to a FOIA request, the Court [wa]s unable to conclude that the agency's search was adequate," id. (citation modified) (citing Walston v. U.S. Dep't of Def., 238 F. Supp. 3d 57, 65 (D.D.C. 2017)). Additionally, the Court found that ATF did not "provide the requisite level of detail" "[r]egarding its searches in response to the information provided by the plaintiff during litigation[.]" Id. For example, the Court explained that although ATF "made an inquiry into the individual's name provided in the plaintiff's summary judgment motion exhibit, it provide[d] no indication as to either the type of inquiry [ ] made or" which name(s) out of a list of names was searched. Id. (internal quotation marks omitted). The Court also found that the defendants "fail[ed] to provide any statement that . . . ATF searched all places where responsive records were reasonably likely to be found." Id. Accordingly, the Court ordered the defendants to submit additional information regarding "the adequacy of the searches conducted by . . . the ATF[.]" March 2022 Order at 2.

In ATF's latest declaration, it "offers [its] sincere apology to [the plaintiff] and the Court," because "[b]ased on [Chisholm's] investigation of this matter, [he] believe[s] that a former ATF employee [who was responsible for the processing of the plaintiff's FOIA request from approximately 2000 until May, 2004] improperly hid, stole, or destroyed ATF's files related to [the plaintiff]." Chisholm Decl. ¶¶ 3, 16. Chisholm represents that this "anomaly" is an "unprecedented [event] in the 30-plus years in which [he has] been an ATF employee. Id. ¶ 16.

Chisholm explains that "[d]ue to the processes in place at the time the records were first assembled and processed [in this case,]" the "records were never scanned for loading into any type of electronic software for FOIA processing or other preservation." Id. ¶ 4. And,

unfortunately in 2007, when ATF was moving its headquarters building, it discovered "several ATF case files and portions of other[ case files that were] wedged between desks and walls, and stuffed into ceiling panels and walls located in and around the former [ATF] employee's assigned work area." Id. ¶ 5. "Upon this discovery, ATF conducted a more thorough search of the [former] employee's work area and recovered all of the materials it could find that were inappropriately stored by the former employee." Id.

After Chisholm learned of the former ATF employee's negligence, he "attempted to reconcile the FOIA requests assigned to the former employee and to reconstruct ATF records found in inappropriate places." Id. ¶ 6. However, Chisholm was unable to reconstruct the plaintiff's FOIA request file, and has "reasonable suspicion" to believe that the "files were removed from ATF's possession, custody, and control." Id. Nevertheless, "[i]n response to the [C]ourt's Orders, [Chisholm] [ ] undertook another comprehensive search of ATF's legacy, current, and next generation case management systems in an effort to locate records responsive to [the plaintiff]'s FOIA request or ATF's FOIA litigation files which should contain copies of those records." Id. ¶ 7.

Accordingly, on April 20, 2022, ATF used "[t]he search terms 'Elwood Cooper,' 'Cooper, Elwood' and 'Elwood J. Copper'" to search its TECS system for records related to the plaintiff but did not find any "investigations initiated by ATF." Id. The agency also searched its N-Force[2] and SPARTAN[3] systems "for any records related to [the plaintiff] using the same search terms [used to search the TECS system] as well as [the terms] '99-2513,' which is [this]

[2] According to Chisholm, "N-Force is ATF's [former] official case file of record for documenting investigative activity and information, creating reports, tracking investigative leads, and linking data." Chisholm Decl. ¶ 7 n.1.

[3] Chisholm explains that SPARTAN is ATF's new record system that will also "provide enhanced communications and data, to assist with the deconfliction of data between the Industry Operations and Criminal Enforcement business areas." Chisholm Decl. ¶ 7.

[c]ivil [a]ction number . . . , and '1999-1489,' which is the tracking number assigned to [the plaintiff]'s FOIA request[,]" but no records were located. Id. Overall, in addition to its N-Force system search and the additional searches identified in the following paragraph, ATF searched the following databases and located no responsive records related to the plaintiff: (1) its "SPARTAN system to determine if [the plaintiff] was mentioned in any Federal Firearms Licensee [ ] or Federal Explosive Licensee [ ] inspections"; (2) its "Firearms Tracing System [ ] database . . . using the term 'Elwood Cooper' to determine if any firearms traces or multiple sales mentioned [the plaintiff]"; (3) its "Information and Privacy Governance Division[] (["]IPG["]) . . . electronic files using the terms 'Elwood Cooper' and 'Cooper'"; (4) the "hard copy documents still in IPG's possession"; (5) and "the Department of Justice's Consolidated Assets Tracking System which contains an inventory of ATF property seized for forfeiture." Id. ¶¶ 7–10.

ATF also searched "the Office of Chief Counsel's case management system, ProLaw" and located "eight pages of entries relating to the underlying litigation[,]" which ATF represented it was releasing in part to the plaintiff. Id. ¶ 11. Lastly, ATF searched "the MS 365 Compliance Center which encompasses the electronic mailboxes of all current and former ATF employees who had a mailbox system[,]" and found "one document which [ATF believes] may have been previously released to [the plaintiff]." Id. ¶ 13. In sum, ATF represents that it "has searched all locations where information regarding [the plaintiff's] FOIA requests or litigation files would be reasonably likely to be located" and has not been able to locate any records described in the plaintiff's FOIA request. Id. ¶ 15.

Despite ATF's representations regarding the scope of its search for responsive documents, the plaintiff contends that the defendant's declaration was "made in bad faith"

because the defendant "claim[s] that they were unable to locate the record[s] previously produced to" the plaintiff, and that the plaintiff himself already has in his possession. See Pl.'s Facts ¶¶ 18, 20. Additionally, the plaintiff argues that the defendants have failed to address "the adequacy of the searches conducted by . . . ATF" despite the Court's previous 2022 Order. Pl.'s Mem. at 6.

The plaintiff's unsupported allegations that the defendants acted in bad faith in conducting their search simply because they did not find documents that the plaintiff was previously provided throughout this litigation, see Pl.'s Facts ¶ 18, does not refute the fact that ATF used all methods it reasonably believed would produce the information the plaintiff requested, see DiBacco v. United States Army, 795 F.3d 178, 188 (D.C. Cir. 2015) ("The burden is on the agency to demonstrate that it made a good faith effort to conduct a search * * * using methods which can be reasonably expected to produce the information requested") (internal quotations omitted). The Court can only require that an agency describe the methods it used to search for records and that it searched all places "likely to contain responsive materials." Porup v. Central Intelligence Agency, 997 F.3d 1224, 1237 (D.C. Cir. 2021). Because ATF has done so, and the plaintiff has not shown why the Court should not give ATF the "presumption of good faith" it is entitled to, see id. ("[a]gency affidavits are accorded a presumption of good faith"), the Court finds that the ATF's search was adequate.

**2. The Adequacy of Customs' Search for Responsive Records**

In the Court's 2022 Memorandum Opinion, it found that Customs's records search in this case was inadequate because Customs did not "definitively state that [it] conducted a search in the TECS in response to the plaintiff's FOIA request" nor did Customs describe "the method and scope of its search." 2022 Memo. Op. at 55 (internal quotation marks omitted). Accordingly,

the Court ordered the defendants to submit "an additional supplemental declaration or Vaughn Index information regarding its search in response to the plaintiff's FOIA request." Id.

In their renewed motion for summary judgment, the defendants have included affidavits from Shari Suzuki, the Chief of the FOIA Appeals and Policy ("FAP") Branch, Regulations and Rulings, Office of Trade ("OT"), U.S. Customs and Border Protection ("CBP"), U.S. Department of Homeland Security ("DHS"), see Suzuki Aff. ¶ 1, and Fernando Pinero, the FOIA Officer of the U.S. Immigration and Customs Enforcement FOIA Office (the "ICE FOIA Office"), see Pinero Decl. ¶ 1. In Suzuki's affidavit, she explains that when the plaintiff filed his FOIA request, "the U.S. Customs Service did not have a centralized FOIA office that handled initial requests[,]" and initial "requests were sent directly to program offices that handled initial FOIA responses." Suzuki Aff. ¶¶ 4(A)–4(C). In the plaintiff's case, "his initial request was sent to the U.S. Customs Service Office of Investigations . . . [h]eadquarters office and its Special Agent in Charge Office in Miami, Florida." Id. ¶ 4(D). However, in 2003, "the U.S. Customs Service Office of Investigations transferred its functions to the newly created . . . ICE[]" and "the U.S. Customs Service also became U.S. Customs and Border Protection" "as part of the overall creation of the" DHS. Id. ¶ 4(E). Additionally, the "U.S. Customs Service Special Agent in Charge office in Miami, Florida ceased to exist" after the creation of DHS. Id. ¶ 4(G). Suzuki explained that, as a result of the creation of DHS, any records related to the plaintiff's case, to the extent they exist, "should be in the custody and control of ICE." Id.

Nevertheless, when Suzuki "receiv[ed] notice of this [case] in October 2021, [she] searched all of [FAP's] existing paper files held on site [and offsite] for any historic records pertaining to [the plaintiff] and his FOIA case with the former U.S. Customs Service[,]" but she did not locate any "existing paper records." Id. ¶ 4(F). Additionally, as to the previous

declaration submitted by the U.S. Customs Service in this case, Suzuki explained that based on her review, the U.S. Customs Service searched the TECS system for documents related to the plaintiff by using the plaintiff's name. See id. ¶¶ 4(J), 4(L). Moreover, "the Special Agent in Charge, Miami, of the U.S. Customs Service Office of Investigations . . . would have been the custodian of the Reports and Investigation [ ] related to [the plaintiff]'s case" and previously "released 182 pages of non-TECS records" to the plaintiff in 2001. Id. ¶ 4(M). Suzuki attested that "[u]pon reasonable belief, there are no other current databases for [her office] to search for the records requested by [the plaintiff] in 2000 that would result in further production." Id. ¶ 4(O).

Regarding the ICE FOIA Office, Pinero declares that in responding to the plaintiff's FOIA request and the Court's 2022 Order, the ICE FOIA Office tasked the Homeland Security Investigations ("HSI") Records Disclosure Unit ("RDU") and the Office of Enforcement and Removal Operations ("ERO") to search for records responsive to the plaintiff's FOIA request. Pinero Decl. ¶¶ 23, 26. HSI RDU represented to Pinero "that information previously stored in the TECS database was transferred to HSI's more technologically advanced Investigative Case Management ('ICM') database."[4] Id. ¶ 26. HSI RDU then tasked a special agent from the West Palm Beach [ ] office to conduct searches for responsive records because the subject investigation occurred within the West Palm Beach [ ] [o]ffice area of responsibility." Id. ¶ 30. The HSI special agent searched "the ICM closed electronic case files, electronic files in Outlook" by "using the plaintiff's name to locate records" and case file number to search paper

[4] According to the defendants, the "ICM database allows HSI to document and manage criminal investigations, serves as a data warehouse for developing statistical reports and satisfying external requests; and allows for data exchange in real-time between ICM and internal/external law enforcement systems." Pinero Decl. ¶ 26.

files. Id. HSI then "sent 240 pages of potentially responsive records extracted from HSI's ICM database to the ICE FOIA office for processing and release to the [p]laintiff." Id.

Additionally, HSI RDU engaged the HSI Records Liaison Officer which used the plaintiff's case file number to search for hard copy records and learned that the plaintiff's records had been transferred to the Atlanta Federal Records Center. Id. ¶ 31. After the plaintiff's records were transferred back to the HSI RDU office in Washington, D.C., HSI RDU searched a "box of hard copy records which were potentially responsive to [the p]laintiff's FOIA request" and located "870 pages that were potentially responsive to the [p]laintiff's FOIA request." Id. ¶¶ 32–33. Those 870 pages were then processed for potential release to the plaintiff at the rate of 500 pages a month. Id. ¶¶ 33–34.

The ICE FOIA office also tasked its Office of Enforcement and Removal Operations ("ERO") to conduct a search for records responsive to the plaintiff's FOIA request. Id. ¶ 23. The ERO office used the plaintiff's "alien number" to search ICE's Enforce Alien Removal Module ("EARM")[5] "application for records that are potentially responsive to Plaintiff's FOIA request." Id. ¶¶ 37–38. The ERO team also used the plaintiff's "alien number" "to search the Eagle database[6] for draft detainer records in response to the plaintiff's FOIA request." Id. ¶ 39 (footnote not in original). The ERO team located a total of 9 pages for processing and release to the plaintiff "subject to partial withholdings." Id. ¶ 40.

In total, the ICE FOIA Office released 1,095 pages of the 1,119 pages to the plaintiff that were responsive to the plaintiff's FOIA request. Id. ¶ 14. "42 pages were released in full and

[5] The defendants represent that EARM is ERO's case management system that "records custody decisions, detention and removal specifics in an undocumented noncitizen's record." Id. ¶ 38.

[6] "The Eagle database is ERO's booking application wherein ICE law enforcement officers process biometric and biographic information of individuals arrested by ICE for criminal violations of law and administrative violations of the Immigration and Nationality Act." Id. ¶ 39.

1,070 pages were released subject to partial withholdings pursuant to FOIA . . . exemptions 6, 7(C) and 7(E)." Id.

Similar to the arguments the plaintiff made regarding ATF's search of documents in this case, the plaintiff argues that the defendants' declarations were presented in bad faith and "do not address any of the issues" previously ordered by the Court. See Pl.'s Mem. at 1, 6; Pl.'s Facts ¶ 18. The plaintiff argues that the "newly release[d records] by ICE are irrelevant and non-responsive to [his] FOIA" request and instead are related to the criminal cases of two other individuals. Pl.'s Facts ¶ 17 (citing Criminal Docket in U.S. v. Ellis, 98-cr-141, and Criminal Docket in U.S. v. Walker, 98-cr-8095).[7] But, the plaintiff has not argued or suggested that the search conducted by Customs or the ICE FOIA office was inadequate or that they improperly withheld or redacted records. Instead, the plaintiff essentially argues that the agencies' search was more expansive than required since the agencies provided him with documents that he argues are unrelated to his case. The Court agrees and therefore finds that Customs' and the ICE FOIA offices' searches were adequate. Cf. SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C.Cir.1991) (explaining that the adequacy of the search is determined by whether it was "reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant").

Accordingly, the Court grants the defendant's renewed motion for summary judgment as to the searches conducted by Customs and ATF.[8]

---

[7] The plaintiff also argues that ICE did not file a Vaughn Index on the Court's public docket for the newly released documents that it released to the plaintiff. See Pl.'s Facts ¶ 17. The Court finds this argument to be without merit since ICE's detailed Vaughn Index is submitted with Pinero's declaration. See generally ICE Vaughn Index, ECF No. 211-5.

[8] The plaintiff also argues that "Customs has not address[ed] the discrepancy between the Kramer declaration and [the] C[]ustom Vaugh[n] Index in [t]he number of pages located, processed, withheld, released in part and released in full[] by Customs." Pl.'s Facts ¶ 21 (capitalization modified). However, the Court already addressed this

(continued . . .)

### B. Inconsistencies Between DEA Records Produced to The Plaintiff and the DEA Vaughn Index or Declarations

In the Court's March 2022 Memorandum Opinion, it identified several entries on the DEA's Vaughn Index that appeared to be inconsistent with the documents produced to the plaintiff as part of the DEA's January 3, 2000 and August 21, 2001 productions, and therefore required the defendants to supplement its declaration or Vaughn Index regarding these specific records. See Cooper 2022 at 42–45, 46. Additionally, after the plaintiff challenged eight pages of records that appeared to be missing from the ATF's and DEA's Vaughn indices, the Court required the defendants to provide "supplemental Vaughn Index information or a supplemental declaration addressing whether the DEA received" a referral regarding those eight pages from ATF on January 20, 2000 and February 7, 2000. See id. at 49.

In a declaration from Angela D. Hertel, who serves as the Unit Chief of the Freedom of Information/Privacy Act Legal and External Affairs Sub-Unit ("CCARL") of the DEA, she explains that her office is "responsible for the receiving, processing, and disclosing of the DEA information requested pursuant to the FOIA." Hertel Decl. ¶¶ 1–2. Hertel details the extensive efforts that the DEA has made in this litigation to provide records to the plaintiff as well as comply with the Court's orders. In the following subsections, the Court will analyze the DEA's compliance with the FOIA as related to the prior issues identified by the Court in 2022.

#### 1. ECF No. 156-1, page 10 of 84

The first seeming discrepancy that the Court identified in its March 2022 Memorandum Opinion, concerned ECF 156-1, page 10 of 84, of the plaintiff's combined opposition. See

---

(. . . continued)
argument in its March 2022 Memorandum Opinion and found that the "Customs' Vaughn Index and the Kramer Declaration provide an adequate basis for the Court to review whether the 154 pages were properly withheld pursuant to the FOIA[,]" Cooper 2022 at 47, and that Customs's Vaughn Index was adequate, see id. at 48.

Cooper 2022 at 43; Pl.'s 2018 Opp'n at ECF No. 156-1 at 10 of 83.[9] The Court could not reconcile the DEA's redactions on ECF 156-1, page 10 of 84 with page 58 of the DEA's Vaughn Index, ECF No. 175-4 at 153, because on page 58 of the DEA's Vaughn Index, it noted that the document referenced on that page was withheld in full, but document ECF 156-1, page 10 of 84 itself only contained three redactions. Hertel's declaration identifies an exhibit the defendants have helpfully included which corrects this discrepancy. Hertel explains that the defendants' earlier submission to the Court "neglected to include references to DEA's supplemental declaration and Vaughn index submitted by former attorney William C. Little, Jr." Hertel Decl. ¶ 8. And, she notes that Little's declaration and Index "provides more specificity than the Wassom" Index the Court referenced in its March 2022 Memorandum Opinion. Id. ¶ 10.

The defendants' correction of the record explains that pages 2–3 of Wassom's Vaughn Index, ECF No. 175-4 at 99–100, and pages 2–3 of the Vaughn Index attached to Little's Declaration, ECF No. 153-1 at 11, correlate to the redactions included on ECF 156-1, page 10 of 84, of the plaintiff's combined opposition, see row 5 of DEA's Cooper Vaughn #3, Chart 1. The Court is satisfied that the defendants have adequately explained the basis for the redactions included on ECF 156-1, page 10 of 84. Specifically, the Wassom Index and the Little Index note that the DEA conducted redactions pursuant to FOIA exemptions (7)(C), (7)(E), (7)(F) in order to protect names and information related to third-parties, internal markings and identifiers, and names, signatures, and initials of DEA special agents and officers.[10]

---

[9] For ease of cross-reference, the Court cites to the documents attached to the plaintiff's 2018 combined reply and opposition by citing to the automatically generated ECF numbers that appear at the top of each page.

[10] The plaintiff argues that the "DEA has not explain[ed] the bases for the withholdings on" ECF No. 156-1, pages 10, 14–15, 18, 31–32, 40–45, 48–54, 63, 84, and ECF No. 156-2 at 1–4. See Pl.'s Facts ¶ 22. However, as detailed in this Memorandum Opinion and the Court's 2022 March Memorandum Opinion, the Court has now exhaustively reviewed the DEA's withholdings and is satisfied that the DEA has now adequately explained each of the withholdings it made to the documents listed by the plaintiff. See Cooper 2022 at 28–43, 48.

### 2. ECF No. 156-1, page 14 of 84

The Court had also previously concluded that there was seemingly no basis for the redactions by the defendant on ECF No. 156-1, page 14 of 84. See Cooper 2022 at 44. The Court previously found that the DEA's first Vaughn Index, ECF No. 175-4 at 103, only included explanations regarding two redactions, but ECF No. 156-1, page 14 of 184 included a total of eight redactions. See id. Additionally, the Court found that it could not reconcile the FOIA exemptions listed by the DEA in its first Vaughn Index with the redactions shown in ECF No. 156-1, page 14 of 84. See id. Accordingly, the Court required the defendant to supplement its declaration or Vaughn Index information to address the bases for the redactions made on ECF No. 156-1 page 14. Id.

In the DEA's updated Vaughn Index chart, it supplements its first Vaughn Index by noting that: (1) Block 4 on ECF No. 156-1 at 14 of 84 was redacted pursuant to FOIA exemption 7(E) because it contains a G-DEP[11] Identifier; (2) Blocks 5, 12, and 14 were redacted pursuant to FOIA exemptions 7(C) and 7(F) because they contain names of special agents; (3) the redactions made in the "Details" section were redacted pursuant to FOIA exemption 7(C) because they contain third-party identifying information; and (4) it could not explain why one redaction was conducted "above Block 11" because the "text that is [covered] is now indecipherable with the passage of time." See row 6 of DEA's Cooper Vaughn #3, Chart 1. The Court will therefore require the defendants to produce to the plaintiff a version of the record contained in ECF No. 156-1 at 14 of 84 that includes the "indecipherable" text that is now included under the redaction above Block 11 since the defendants have not provided the Court

[11] "According to the DEA, 'G-DEP . . . codes are assigned to all DEA cases and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation[,] and the suspected location and scope of criminal activity.'" Cooper 2022 at 39 (quoting Wassom Decl. ¶ 39(1)).

with a basis to find that the text should remain redacted. As to the remainder of this page, and the DEA's supplemental explanations, the Court is satisfied that the defendant has complied with its obligations under the FOIA.

**3. ECF No. 156-1, page 15 of 84**

As to the document at ECF No. 156-1, page 15 of 184, the Court previously found that "the defendants [did] not provide any corresponding Vaughn Index page" for the Court to consider in "assessing the withholdings" on this page, and ordered the "defendants to submit supplemental Vaughn Index information or a declaration regarding" this page. Cooper 2022 at 45.

In the DEA's updated Vaughn Index chart, it explains that ECF No. 156-1, page 15 of 184 "correlates to page 104 of the Wassom [d]ecl[aration]." See row 7 of DEA's Cooper Vaughn #3, Chart 1. The DEA has also supplemented its declaration to explain that: "(1) Block 1 is blank [and] [] the redaction for Block 5 just covers" Block 1; "(2) Block 2 [contains] [c]ross-[f]ile [n]umber referencing [c]onfidential [s]ource numbers[,]" which are redacted pursuant to FOIA exemption 7(E) and also 7(D); "(3) Block 4 [contains] G-DEP Identifier" information and was redacted pursuant to FOIA exemption 7(E); and (4) Blocks 5, 9, 10, 12, 14 and the "Details" section were redacted pursuant to FOIA exemption 7(C), 7(E), and 7(F) because they contained third-party identifying information, a NADDIS number, or identifying information for law enforcement officers. Id. However, the defendant explained that one small redaction "above Block 11 covers text that is now indecipherable due to the passage of time." Id. As concluded above, with these explanations the Court is satisfied that the defendants have complied with its FOIA obligations as to most of the redactions conducted on this page, but will require the defendants to produce to the plaintiff an amended ECF No. 156-1, page 15 of 184, which omits

the redaction that appears immediately above Block 11 since the defendants cannot explain why this particular section was redacted.

### 4. ECF No. 156-1, page 18 of 84

In the Court's March 2022 Memorandum Opinion, it found that the defendant provided no "corresponding Vaughn Index [for] page [ ] ECF No. 156-1 page 18[,]" and therefore "the Court [was] without any basis for assessing the withholdings on" this page." Cooper 2022 at 45. Accordingly, the Court ordered the "defendants to submit supplemental Vaughn information or a declaration regarding" this page. Id.

In the DEA's updated Vaughn Index chart, it explains that ECF No. 156-1, page 18 of 84 correlates to page 210 of the Wassom Index, see ECF No. 175-4 at 210 of 328, and page 63 of the Little Index, see ECF No. 153-1 at 63 of 140. In the Little Index, the DEA explains that the two sections of redactions on ECF No. 156-1, page 18 of 84, were to shield C-Dep Identifier information, names of task force officers, and names of DEA special agents pursuant to FOIA exemptions (7)(E), 7(C), and (7)(F). See Little Declaration, ECF No. 153-1 at 63 of 140. Wassom's Index includes the same information as Little's Index, but it does not indicate that any redactions were made pursuant to FOIA exemption (7)(E) because of the inclusion of a C-Dep Identifier. With this additional information, the Court is satisfied the information on ECF No. 156-1, page 18 of 184 was properly withheld by the defendants.

### 5. Discrepancies in G-DEP Identifier Codes in the DEA's First Vaughn Index

The Court also identified in its March 2022 Memorandum Opinion discrepancies regarding the DEA's redaction of G-DEP identifier codes without accounting for those redactions in its Vaughn Index. See Cooper 2022 at 46. Thus, the Court found that "for the

pages on which there appear to be G-DEP identifier codes redacted, but the DEA's Vaughn Index does not account for the redaction of G-DEP identifier codes, the Court will direct the defendants to submit a revised Vaughn Index and declaration regarding the withholdings on these pages." Id. The DEA has now explained and/or supplemented its response in the DEA's Cooper Vaughn #3, Chart 1, see rows 9–20, 22, for all thirteen rows in the DEA's Vaughn Index in which this discrepancy appeared, see Cooper 2022 at 46 n.49 (listing rows). The Court will not detail all of the updates that the DEA has made in this Memorandum Opinion, and will address only one entry which it will require the DEA to update its production to the plaintiff.

**a. ECF No. 156-1, page 31 of 84**[12]

The Court required the DEA to submit a revised Vaughn Index or declaration regarding ECF No. 156-1, page 31 of 84, which correlated to page 105 of the Wassom Index, ECF No. 175-4 at 105 of 328. See Cooper 2022 at 46. In the DEA's updated Vaughn Index, it indicates that it redacted: (1) Block 3 pursuant to FOIA exemption 7(E) because it contained a G-DEP Identifier and (2) Blocks 16, 17, 18, 20, 21, 23, 24, 34, 35, 37, 38, and part of the "Remarks" section pursuant to FOIA exemption 7(C) or 7(F) because they include identifying information for third parties including some special agent identifying information. See DEA's Cooper Vaughn #3, Chart 1, see row 9. However, the DEA has removed the redactions in: (1) Blocks 36, 38–39, 25–26. Therefore, to the extent that the DEA has not already produced this revised record to the plaintiff with the redactions removed in the five Blocks just identified, the Court will require the defendants to produce the revised record to the plaintiff.

[12] The plaintiff asserts that the "defendants have not address[ed] row 68 of its reply to [the plaintiff]'s response (159 @ 14)." Pl.'s Facts ¶ 19 (capitalization omitted). As detailed in the DEA's Cooper Vaughn #3, Chart 1, see row 9, the DEA did in fact address row 14 of its filing in ECF No. 159, as the Court details above, and therefore, the Court finds the plaintiff's contention without merit.

### 6. Redaction Discrepancies of Documents Generally Versus the DEA's Vaughn Index

In the Court's March 2022 Memorandum Opinion, it identified seven additional records which contained redaction discrepancies as compared to what was documented in the DEA's Vaughn Index. See Cooper 2022 at 46 & 46 n.50. Accordingly, the Court required "the defendants to submit supplemental Vaughn Index information or a declaration regarding [those] documents." Id. Upon reviewing the DEA's updated Vaughn Index, see DEA's Cooper Vaughn #3, Chart 1, see rows 11, 13, 17, 20–24,[13] and the accompanying Wassom and Little Indices described in the DEA's updated Vaughn Index, the Court is satisfied that the defendants have sufficiently addressed each discrepancy the Court detailed in its March 2022 Memorandum Opinion and properly detailed the FOIA Exemptions applicable to each redaction.[14]

[13] As he did before, the plaintiff argues that the "defendants have not address[ed]" the documents included at "ECF No. 156-2 @ 1–4," see Pl.'s Facts ¶ 19, but the Court finds this contention without merit since the defendants have exhaustively addressed the DEA's FOIA exemptions applied to these four pages, see DEA's Cooper Vaughn #3, Chart 1, rows 23–24, and the plaintiff does not appear to make any specific challenge to the FOIA exemptions the DEA has applied, see Pl.'s Facts ¶ 19.

[14] The plaintiff makes an unsupported contention that DEA has not "accounted for the remaining 123 pages of the 243 pages that originated with [the] DEA." Pl.'s Facts ¶ 14. However, "it is not enough [to] merely [ ] mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones[,]" Davis v. Pension Ben. Guar. Corp., 734 F.3d 1161, 1166–67 (D.C. Cir. 2013), and the Court will not do so here considering the fact that the Court has already found that "DEA's search for records responsive to the plaintiff's FOIA request was adequate[,]" see Cooper 2022 at 24, in addition to the fact that the plaintiff has failed to provide any further explanation as to what documents he is referencing.

The plaintiff also appears to argue that specific withholdings in documents that the defendants produced to him have not been "address[ed by the Court] on the merits." Pl.'s Mem. at 1–2, see Defendants' Second Renewed Motion for Summary Judgment, ECF No. 120-2 at 107, 118–24, 151–65, 180–87. However, the Court detailed the defendant's FOIA exemption withholdings in its March 14, 2016 Memorandum Opinion, ECF No. 137, and therefore denies the plaintiff's request to revisit them especially given the fact that the plaintiff provides no reason for the Court to do so.

Additionally, the plaintiff appears to argue that the Court has not "address[ed] on the merits[,]" Pl.'s Mem. at 1–2, withholdings in letters sent to him by the Bahamian government, see Pl.'s Mem., Tab I, ECF No. 212 at 102–03. For several reasons the apparent argument is irrelevant to the resolution of this case. First, there does not appear to be any redactions made in the letters cited by the plaintiff. And second, if the plaintiff is arguing that these records were somehow withheld from him, that position is of no moment since the FOIA only applies to United States agencies. See 5 U.S.C. § 552(f) (defining "agency" for purposes of the FOIA as "any executive department, military department, [g]overnment corporation, [g]overnment[-]controlled corporation, [ ] other establishment in the executive branch of the [g]overnment[,]" or "any independent regulatory commission").

### 7. ATF's Referral to the DEA in Early 2000

Another matter about which the Court ordered the defendant to provide either a "supplemental Vaughn Index [ ] or a supplemental declaration" was "whether the DEA received" an eight-page referral by the DEA on January 20, 2000, and February 7, 2000" "that contained information about a firearm that was transferred from the DEA to the ATF." Cooper 2022 at 49 (internal quotations and brackets omitted). The Court found that "although the defendants argue[d] that the DEA has no record of receiving this referral, they provide[d] no citation to a declaration from a representative of the DEA or any other source stating that the DEA has no record of receiving the ATF's referral." Id. (citation modified).

To respond to the Court's Order, ATF searched the "MS 365 Compliance Center which encompasses the electronic mailboxes of all current and former ATF employees who had a mailbox on this system" using the search terms "elwood cooper, [ ] 99-2513 and 1999-1489 . . . without a date range limiter." Chisholm Decl. ¶ 12. ATF "located one document which [it declares] may have been previously released to [the plaintiff,] . . . which consists of a case analyst's notes about the [the plaintiff's] FOIA case made at some point between 1999 and 2001, along with [a] March 8, 2013, email [that was] released to [the plaintiff] in part." Id. ¶ 13. In the case analyst's notes, ATF represented that it sent a letter to the plaintiff on February 16, 2000, explaining that it located 23 pages of relevant material which consisted of seven pages that "were originated by DEA and were referred to DEA for review." Chisholm Decl, Attachment A-3, ECF No. 211-2 at 10 of 21. ATF further provided in the notes that it sent the remaining pages to the plaintiff "with redactions and explanations . . . on 2/17/01." Id. However, ATF has no additional information about this referral that was made because of its former employee's destruction and lack of retention of certain documents, as discussed supra Section III.A.1. Thus,

the ATF represents that Chisholm's declaration "provides at best indirect evidence of the referral to DEA in February 2000." Def.'s Mem. at 4.

The DEA explains that the declaration previously submitted by Little in 2013, and filed with the Court as part of the defendant's notice in 2018, see generally Little Decl., includes information "fully address[ing] the issue of the missing ATF Referral." Hertel Decl. ¶ 19. In Little's declaration, he declares that "[s]ince on or before December 20, 2012, DEA has searched for a referral from . . . []ATF[] related to [the plaintiff] that was purportedly forwarded to DEA in about the year 2000." Little Decl. ¶ 22. Specifically, the DEA used the plaintiff's name to search a database of records that contain information dating back to 1982, and identified four "file number references related to the plaintiff." Id. ¶ 24. The DEA then used those file numbers to identify any physical files associated with the plaintiff. See id. The DEA located and reviewed "[a]ll but one [ ] of the physical files associated with the file numbers[,]" id., but did not identify a referral from ATF, id. ¶ 25. "According to the data base, the file that could not be located involved the processing of seven [ ] pages which were withheld as 'previously processed[,]" id. at ¶ 24, but the DEA could not identify this specific file "as the ATF referral in question, based upon the description of the documents and the information available in the FOIA data[base]," id. at 25. Additionally, Little declared that the "DEA [ ] searched the office files of the Freedom of Information Operations Unit [ ] and the Administrative Law Section of the Office of Chief Counsel [ ] and the employee file storage locations of each office in an attempt to locate the missing file" since those are the only two offices that "would or could have a need for, access to[,] or possession of the missing file." Id. ¶ 26. Little declared that "there are no other DEA offices that are reasonably likely to possess the missing file." Id. ¶ 27.

Additionally, "[i]n 2022, [the] DEA performed another search for the alleged referral from ATF." Hertel Decl. ¶ 21. Specifically, the DEA "searched its current case management system . . . [by using the plaintiff's name,] which contains documentation regarding FOIA requests (including referrals) submitted since approximately 2010[.]" Id. Additionally, the DEA also searched its case management system that was used prior to 2010, but did not locate anything that "suggest[ed] the existence of the alleged referral from ATF." Id. Further, the DEA "searched through all its available hard copy files of the [plaintiff's] request and litigation, including those [files] recoverable from off-site archives and review[ed those files], page by page, . . . [but] did not find the alleged referral from ATF." Id.

Based on this record, the Court finds that despite it not being apparent to the Court in 2022, the DEA did in fact previously provide a declaration from one of its representatives which details the fact that the DEA has no record of the referral of eight-pages that contained information about a firearm that was transferred from the DEA to the ATF in 2000. The Court is therefore satisfied that both ATF and the DEA have searched diligently for the alleged referral that was made in 2000, but have been unable to locate any records concerning the alleged transfer.[15]

[15] The plaintiff challenges the ATF's and DEA's explanation that they could not locate the alleged eight-page referral made in early 2000 by attaching the letters he received from the DEA on February 4, 2000 and February 25, 2000. See DEA Letters from Feb. 4th and Feb. 25th 2000. But, it is not apparent why these letters show that the defendants acted in bad-faith in regards to their search for this alleged referral since the ATF and DEA have thoroughly detailed the procedures they employed to search for the pages in question regarding this alleged referral, but have been unable to locate them. Moreover, the DEA has already acknowledged that it too was able to find a letter regarding seven pages that were withheld from the plaintiff, see Little Decl. at 24, but was not able to actually locate the seven pages after conducting a diligent search, id. ¶ 25.

### C. The FOIA Exemptions Applied to the Newly Released Documents

As discussed above, supra Section III.A.2., after receiving the plaintiff's FOIA request on May 11, 2022, the ICE FOIA office conducted a diligent search for records responsive to the plaintiff's FOIA request and ultimately reviewed and processed 1,119 pages. See Pinero Decl. ¶¶ 13–14. Of the 1,119 pages, ICE FOIA determined that 1,095 were responsive to the plaintiff's FOIA request and released to him 42 pages in full and 1,070 pages only in part pursuant to FOIA exemptions 6, 7(C) and 7(E). Id. ¶ 14.[16] Additionally, as discussed infra section III.D, the Marshals Service located five pages of records on November 26, 2021, when it was conducting a search of its Justice Detainee Information System ("JDIS") by using the plaintiff's name as a search term. See Luckstone Decl. ¶ 10. The pages located "contain[ed] information pertaining to an individual's criminal history and detention history." See U.S. Marshals Service Vaughn Index at 3. Subsequently, the Marshals Service processed and released the five records to the plaintiff on August 30, 2022. Id. However, due "to an internal procedural change [the] USMS made to withholdings pursuant to FOIA Exemption (b)(7)(E), the [five] records were reprocessed and re-released to [the p]laintiff on September 25, 2023." Id. ¶ 11. And, the Marshals Service's Vaughn Index notes that the five records were partially

[16] It appears there may be a difference of one page that is unaccounted for between ICE FOIA's Vaughn Index and what is represented in Pinero's declaration. This is because, when adding the 42 pages released in full with the 1,070 pages that were released in part, that equates to 1,112 pages. And, according to the ICE FOIA Vaughn Index, it fully withheld 6 pages. See ICE FOIA Vaughn Index at 42, 60. Accordingly, the 42 + 1070 + 6, equals 1118. Additionally, totaling the Bates Page Numbers in ICE FOIA's Vaughn Index also does not equate to 1,119. The defendants' renewed summary judgment motion memorandum also does not help the Court in this regard because the defendants' memorandum asserts that ICE FOIA "withheld in full nineteen pages" and identifies thirteen pages that were allegedly withheld as reflected on page 54 of ICE FOIA's Vaughn Index; however, page 54 of the defendant's Vaughn Index does not reflect that any pages were withheld in full. Therefore, the Court will require the defendants to submit a declaration to the Court explaining this seeming discrepancy.

withheld pursuant to FOIA Exemption 6, (7)(C), (7)(F),[17] and (7)(E). See generally U.S. Marshals Service Vaughn Index, ECF No. 211-3 at 1–7.

**1. Exemption 6 and 7(C)**

Under FOIA Exemption 6, "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy" are exempt from disclosure. 5 U.S.C. § 552(b)(6). "The 'primary purpose' of Exemption 6 is to 'protect individuals from the injury and embarrassment that can result from the unnecessary disclosure of personal information.'" Hum. Rts. Def. Ctr. v. U.S. Park Police, 126 F.4th 708, 713 (D.C. Cir. 2025) (quoting U.S. Dep't of State v. Wash. Post. Co., 456 U.S. 595, 599 (1982)). "Exception 6 may apply to entire files or may call for redaction of 'bits of personal information, such as names and addresses, the release of which would create a palpable threat to privacy.'" Id. (quoting Jud. Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 152–53 (D.C. Cir. 2006)).

The Court must undertake a two-part inquiry to determine whether Exemption 6 applies. First, the Court must determine "whether disclosure would compromise a substantial, as opposed to a de minimis, privacy interest." Id. (quoting Niskanen Ctr. v. Fed. Energy Regul. Comm'n, 20 F.4th 787, 791 (D.C. Cir. 2021)). "The government bears the burden of showing that a substantial invasion of privacy will occur if the documents are released." Prison Legal News, 787 F.3d at 1147 (citing Ripskis v. Dep't of Hous. & Urban Dev., 746 F.2d 1, 3 (D.C. Cir. 1984)). The government may satisfy this burden with affidavits "if they contain reasonable

[17] The Marshals Service listed FOIA Exemption (b)(7)(F) on its Vaughn Index, but did not specify that any documents were withheld pursuant to (b)(7)(F). Thus, because (b)(7)(F) "applies to information 'compiled for law enforcement purposes' the disclosure of which 'could reasonably be expected to endanger the life or physical safety of any individual[,]'" James v. Drug Enforcement Admin., 657 F.Supp.2d 202, 206 (D.D.C. 2009) (quoting 5 U.S.C. § 552(b)(7)(F)), the Court will not require the defendants to detail which redactions were made pursuant to this exemption because this exemption is presumably more narrow than documents exempt pursuant to (b)(7)(C), which provides that documents may be withheld to protect an individual's privacy interest, see 5 U.S.C. § 552(b)(7)(C).

specificity of detail rather than conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." Jud. Watch, Inc. v. U.S. Secret Serv., 726 F.3d 208, 215 (D.C. Cir. 2013) (quoting Consumer Fed'n of Am. v. U.S. Dep't of Agric., 455 F.3d 283, 287 (D.C. Cir. 2006)).

If the agency satisfies its initial burden, the Court must then "balance the individual's right of privacy against the public interest in disclosure." Niskanen Ctr., 20 F.4th at 791 (quoting Prison Legal News, 787 F.3d at 1147). "[T]he balancing inquiry focuses 'not on the general public interest in the subject matter of the FOIA request, but rather on the incremental value of the specific information being withheld.'" Id. (quoting Schrecker v. U.S. Dep't of Just., 349 F.3d 657, 661 (D.C. Cir. 2003)). And, the only relevant public interest in this analysis is "the extent to which disclosure of the information sought would 'shed light on the agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" U.S. Dep't of Def. v. Fed. Labor Rels. Auth., 510 U.S. 487, 497 (1994) (quoting Reps. Comm. for Freedom of the Press, 489 U.S. at 773).

Similarly, FOIA Exemption 7(C) protects records compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" Id. § 552(b)(7). "To show that . . . documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between [an] investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." Blackwell v. FBI, 646 F.3d 37, 40 (D.C. Cir. 2011).

In determining whether FOIA Exemption 7(C) applies to a particular record, the Court must balance the privacy interest of individuals mentioned in the records against the public

interest in disclosure. See Am. C.L. Union v. U.S. Dep't of Just., 655 F.3d 1, 6 (D.C. Cir. 2011). The privacy interest at stake belongs to the individual, not the government agency, see Reps. Comm. for Freedom of the Press, 489 U.S. at 763–65, and as noted earlier, "[w]hen balancing an individual's privacy interest against the public interest in disclosure, the only public interest relevant for purposes of Exemption 7(C) is one that focuses on the citizens right to be informed about what their government is up to." Davis v. U.S. Dep't of Just., 968 F.2d 1276, 1282 (D.C. Cir. 1992) (internal quotations omitted). It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. See Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004).

**a. ICE FOIA and the U.S. Marshals Service's Application of Exemptions 6 and 7(C)**

ICE "performs a law enforcement function in that it investigates criminal activities such as immigration crime; child exploitation; human rights violations and human smuggling; smuggling of narcotics, weapons and other types of contraband; and financial crimes, cybercrime and export enforcement issues." Pinero Decl. ¶ 57. The U.S. Marshals Service also performs an inherent law enforcement function in that it, at a minimum, assists with warrants and prisoners "who are in [its] custody or have a federal arrest warrant issued, or are scheduled for a move between detention facilities." Luckstone Decl. ¶ 4 n.3.

Pinero declares that "ICE [FOIA] applied Exemption 6 in conjunction with Exemption 7(C) to protect from disclosure the names, residential addresses, business addresses, vehicle registration numbers, vehicle identification numbers, vessel registration numbers, aircraft registration numbers, social security numbers, state identification numbers, dates of birth, phone numbers and other personally identifiable information ('PII') of third-party individuals." Id.

¶ 59. ICE FOIA contends that it applied these two FOIA Exemptions "to withhold the names, initials, signatures, phone numbers, email addresses, and suite numbers of federal law enforcement officers and other government employees that are found in the documents." Id.

Pinero explains that the "federal employees referenced in the responsive records . . . have privacy interests in not becoming targets of identity theft, harassment[,] or harm by individuals who may begrudge them[,] and in remaining free of interference in the performance of their duties by persons who are of interest to law enforcement or who oppose the ICE mission." Id. ¶ 60. "Publicly disclosing employees' personally identifying information [could] subject[] ICE employees to harassment or harm[,]" id. ¶ 61, especially because of "the extensive media coverage of illegal immigration" which has subjected ICE employees to "intimidation and personal attacks . . . due to the nature of their work[,]" id. Moreover, Pinero declares that as of 2020, the Office of Personnel Management ([']OPM[']) recognized ICE as a [s]ecurity/[s]ensative agency . . . [which] ensures that OPM withholds all relevant . . . []PII[] of all ICE personnel when it processes FOIA requests." Id. ¶ 62.

Additionally, Pinero attests that "third party individuals have a recognized privacy interest in not being publicly associated with law enforcement investigations through the release of records compiled for law enforcement purposes." Id. ¶ 63. According to Pinero, third parties who "have not consented to the disclosure of their PII information[,]" id., may be stigmatized from being connotated with "individuals in law enforcement files[,]" and so their privacy interest "outweighs any minimal public interest or public need to justify release of this information." Id. Moreover, disclosure of PII "serves no public benefit and would not assist the public in understanding how ICE is carrying out its statutory responsibilities." Id.

Balancing the federal employees' and the third parties' privacy interests in securing their PII with the public's interest, ICE FOIA determined that "the redaction[s] w[ere] limited to the name of the individual and all other [PII] information, which if released, would not shed any further light as to the operations or activities of ICE." Id. ¶ 65.

The Marshals Service explained that it withheld the name of a defense attorney, "the names and locations of third parties believed to be family members and associates of [the p]laintiff, and [the plaintiff's] prior address and phone number information." See U.S. Marshals Service Vaughn Index at 3–4. The USMS also withheld the PII information "of third parties names" because its disclosure "would constitute an unwarranted invasion of personal privacy and subject the individuals to embarrassment, harassment, and undue public attention." Id. Additionally, the Marshals Service explained that the plaintiff's "prior address information and phone number was withheld to protect the privacy interests of individuals currently residing at [the] address and [who] utilize the phone number, as these individuals have a privacy interest in avoiding any negative inference of association with criminal activity based upon their residence and contact information." Id. at 3–4. And, the release of third party PII "would not shed light on any federal government operations or serve an articulable public interest." Id. at 4. Moreover, USMS declares that it "does not have the consent of any third parties names in the records to release" their PII information. Id.

Upon consideration of the statements in these affidavits and the Marshals Service's Vaughn Index, and without any specific counterargument from the plaintiff, the Court concludes that the defendants have appropriately asserted FOIA Exemptions 6 and 7(C) as the basis for its withholdings.

**2. Exemption (7)(E)**

FOIA Exemption 7(E) protects from disclosures records compiled for law enforcement purposes that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(7)(E).

Therefore, a record must satisfy three requirements to qualify for this exemption: "(1) the record must be 'compiled for law enforcement purposes'; (2) the record's release must disclose techniques, procedures, or guidelines used for law enforcement investigations or prosecutions; and (3) disclosure of those techniques, procedures, or guidelines must 'reasonably be expected to risk circumvention of the law.'" Nat'l Ass'n of Minority Veterans v. U.S. Dep't of Veterans Affs., No. 21-cv-1298 (RC), 2024 WL 810032, at *3 (D.D.C. Feb. 27, 2024) (quoting Advancement Project v. U.S. Dep't of Homeland Sec., 549 F. Supp. 3d 128, 142 (D.D.C. 2021)). The third requirement presents "a relatively low bar for the agency to justify [a] withholding[,]" Blackwell, 646 F.3d at 42, and therefore, "[r]ather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Mayer Brown LLP v. IRS, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (internal quotation and citation omitted) (second alteration in original).

**a. ICE FOIA and the U.S. Marshals Service's Application of Exemption 7(E)**

ICE FOIA declares that it applied Exemption (7)(E) to withhold "law enforcement sensitive numbers and internal codes to various law enforcement sensitive databases and case management systems, including . . . the Case Number, the Reports [o]f Investigation (['[ROI[']])

Number, the Event Number, [and] the Person Identification Number." Pinero Decl. ¶ 68. ICE FOIA withheld this information because it "points to or contains information about systems that law enforcement use to store, index, and communicate information" and "could be used by persons seeking improper access to law enforcement sensitive data either by deleting or altering information." Id. The release of this information could also "allow a person to breach sensitive legal/law enforcement sensitive systems and potentially circumvent detection or manipulate law enforcement sensitive information," according to Pinero. Id. Pinero declares that this information "is not readily known by the public" and its disclosure "serve[s] no public benefit and would not assist the public in understanding how the agency is executing its statutory" mandates. Id.

ICE FOIA also withheld information pursuant to (7)(E) "to safeguard law enforcement sensitive[] information that would disclose techniques and/or procedures regarding HSI criminal law enforcement investigations that could reasonably be expected to risk circumvention of the law []by revealing operational details that would allow evasion of arrest." Id. ¶ 69. If ICE FOIA were to reveal this information, Pinero declares that individuals could take "proactive steps to counter operational and investigative actions taken by HSI." Id. ICE FOIA attests that disclosure of any of this information "serves no public benefit and would not assist the public in understanding how the agency is" complying with its statutory mandates. Id.

As for the Marshals Service—it explains that it applied Exemption (7)(E) to withhold "internal identifying codes and numbers used to label third-party individuals in a non-public law enforcement database[;] non-public, internal identifying numbers that pertain to the [p]laintiff[; and] prisoner alias information." U.S. Marshals Service Vaughn Index at 6; see id. at 4.

In the Marshals Service's Vaughn Index it explains that "[p]ublic disclosure of information such as internal codes and internal identifying numbers would assist unauthorized parties in deciphering the meaning of the codes and numbers, aid in gaining improper access to law enforcement databases, and assist in the unauthorized party's navigation of these databases." Id. at 4. Similar to ICE FOIA, the Marshals Service provided that the "disclosure of techniques for navigating the databases would permit people seeking to violate the law to gain sensitive knowledge and take preemptive steps to counter actions taken by law enforcement during investigatory operations." Id. Additionally, as to the aliases, the Marshals Service states that "[r]evealing the identities [that] law enforcement associated with a criminal target divulges information pertaining to the criminal enterprise(s) [that] law enforcement suspected [the] individual of being associated with and/or specific third-party individuals a target was suspected [of] associati[ng] with." Id. The Marshals Service asserts that the "disclosure of this information serves no public benefit and would not assist the public in understanding how the agency is carrying out its statutory responsibilities." Id. at 4, 6

Considering the "low bar for the agency to justify withholding" under Exemption 7(E), Blackwell, 646 F.3d at 42, and the lack of any argument from the plaintiff challenging these withholdings, the Court concludes that the defendants have appropriately applied Exemption 7(E) to these records.

### D. Segregability

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). The District of Columbia Circuit requires that district courts make an express finding on segregability before approving the withholding of exempted documents. Machado

Amadis v. United States Department of State, 971 F.3d 364, 371 (D.C. Cir. 2020) ("We have held that district courts cannot approve withholding exempt documents 'without making an express finding on segregability'") (quoting Morley v. Cent. Intel. Agency, 508 F.3d 1108, 1123 (D.C. Cir. 2007)). "A court may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated for this reason." Juarez v. Dep't of Just., 518 F.3d 54, 61 (D.C. Cir. 2008). For example, the Circuit has found it adequate for an agency to declare that it "conducted a page-by-page review of all investigative records contained in the requested documents, and determined that each document, and each page of each document, contained information subject to [an] exemption[][, and] justified its inability to simply redact sensitive portions . . . from these documents by pointing out that the balance of information remaining in the documents could still reveal" sensitive information. Id. at 61.

In the Court's 2022 Memorandum Opinion, it found that although Customs and the State Department reasonably segregated the information it properly withheld from the plaintiff, see Cooper 2022 at 51, the Court could not review whether the DEA, ATF, and the Marshals Service did so because those agencies did not provide the Court with "any information regarding how [they] undertook [their] segregability analysis," id. at 53; see id. at 52–53. Specifically, although the agencies described each document withheld and the reason it was withheld in their otherwise comprehensive Vaughn Index, the agencies did not provide sufficient information in, for example, an affidavit that they conducted a page-by-page review of all investigative records and determined that it was not possible to simply redact sensitive portions of the record because the balance of information remaining in the document would still reveal sensitive information. See e.g., id. at 53 (citing Juarez v. U.S. Dep't of Just., 518 F.3d 54, 61 (D.C. Cir. 2008)).

In the defendants' renewed motion for summary judgment, and as detailed in supra Section III.A.1, ATF is now "unable to locate the records it previously provided to [the p]laintiff," Defs.' Mem. at 4 (citing Chisholm Decl. ¶¶ 15–16), and "there is no way for ATF to reconstruct any of the missing records." Chisholm Decl. ¶ 16. Accordingly, ATF "is [ ] unable to provide any additional segregability analysis to the Court" regarding the records it previously produced to the plaintiff before the Court issued its 2022 Memorandum Opinion. Id.

The defendants represent that the same is true for the Marshals Service. According to the Marshals Service, despite its best efforts to "locate copies of the previously released documents," Luckstone Decl. ¶ 8; see id. ¶¶ 9–17, as detailed in the declaration from Charlotte Luckstone, the USMS was unable to locate the documents or "reproduce the previously released records to the Court" and was thus "unable to conduct a segregability analysis on the prior productions[,]" id. Therefore, as to the records ATF and the Marshals Service are unable to locate, the Court cannot determine if their agencies' segregability analysis was legally appropriate, but it will nevertheless grant the defendant's motion for summary judgment as to these documents since the defendants have demonstrated the diligence they exercised in attempting to locate the documents.[18]

Moreover, the Marshals Service declares that as to the records it "re-release[d] . . . to [the p]laintiff dated September 25, 2023 [, it conducted] a line-by-line review [of those documents] to

[18] The plaintiff also argues that the Lockstone's declaration was made in bad faith because the Marshals Service was unable to locate copies of the previously released documents to the plaintiff. See Pl.'s Facts ¶ 18. The Court, as it ruled above, see supra Sections III.A.1 and III.A.2, finds that the plaintiff's unsupported contention is without merit, as he has not provided any evidence to refute the presumption of good faith accorded to the agency. SafeCard Servs., Inc. v. Secs. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C. Cir. 1991). And, the agency's inability to locate records despite its best efforts, detailed in affidavits, does not mean that the agency is not entitled to a presumption of good faith. See Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982) ("[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA.").

identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied." Id. ¶ 19; see id. ¶ 11. And, the Marshals Service declares that "[a]ll information not exempt from disclosure pursuant to the FOIA exemptions . . . was correctly segregated and non-exempt portions were released." Id.[19]

As for the DEA, it "contacted . . . William Little knowing that he created a supplemental Vaughn [I]ndex for the [ ] records at issue in 2013." Hertel Decl. ¶ 24. "Little stated . . . that he conducted a segregability review when he drafted the supplemental declaration and Vaughn [Index] in 2013." Id. ¶ 25. Specifically, Little "advised that he conducted a 'line-by-line, page-by-page, document-by-document' review of the records and determined that the withheld material within each document contained material subject to FOIA exemptions, and that the withheld information did not contain non-exempt material that could be segregated and released." Id. However, in cross-referencing records included in Little's Vaughn Index to those in Wassom's Vaughn Index, the "DEA could not locate . . . fifteen records apparently cited in the Wassom [Vaughn] Index" but not cited in Little's Vaughn Index. Id. ¶ 27. Therefore, the "DEA conducted a line-by-line, page-by-page, document-by-document review of the [ ] records and determined that in some instances the withheld material within each document contained material subject to FOIA exemptions and that the withheld information did not contain non-exempt material that could be segregated and released." Id. ¶ 30. But, "[i]n other instances, [the] DEA determined that some of the information that appeared to have been originally

[19] The plaintiff argues that "the USMS has yet to make an official FOIA release of the 83 pages filed in this litigation." Pl.'s Facts ¶ 14 (capitalization omitted). However, in Luckstone's declaration, she declares that USMS did in fact process and release 83 pages that were "subject to partial withholdings" to the plaintiff. Luckstone Decl. ¶ 5. Then, "[d]ue to a change in controlling caselaw, in 2012, the USMS made a supplemental release of 39 pages with previously withheld internal numbers released to [the p]laintiff." Id. ¶ 6. Therefore, the Court finds the plaintiff's assertion that he has yet to receive 83 pages from USMS without merit and instead credits Luckstone's declaration which represents the opposite.

withheld could be segregated and [it then] reprocessed [those] documents" for release to the plaintiff, which has occurred. Id. ¶ 31.

Upon consideration of each of the declarations submitted by the defendants, and of the records the agencies are able to locate, the Court is satisfied that the defendants have withheld no portions of documents that could be reasonably segregated and released to the plaintiff.

## IV. CONCLUSION

For the foregoing reasons, the Court must grant in part and hold in abeyance in part the defendants' renewed motion for summary judgment, deny the plaintiff's cross-motion for summary judgment, and deny as moot the plaintiff's motion to enforce the District of Columbia Circuit remand mandates.

**SO ORDERED** this 17th day of November, 2026.[20]

REGGIE B. WALTON
United States District Judge

[20] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.